## PULLMAN COMPANY *v.* STATE OF KANSAS EX REL. COLEMAN, ATTORNEY GENERAL.

### ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 5.   Argued March 17, 18, 1909.—Decided January 31, 1910.

The judgment of the court below reversed on the authority of *Western Union Telegraph Company* v. *Kansas, ante,* p. 1, and also *held* that:

A corporation organized in one State and doing an interstate business is not bound to obtain the permission of another State to transact interstate business within its limits, but can go into the latter, for the purposes of that business, without liability to taxation there with respect to such business, although subject to reasonable local regulations for the safety, comfort and convenience of the people which do not, in a real, substantial sense, burden or regulate its interstate business nor subject its property interests outside of that State to taxation.

The requirement that such a company, as a condition of its right to do intrastate business, shall, in the form of a fee, pay to the State a

specified per cent of its authorized capital, is a violation of the Constitution of the United States, in that such a single fee, based on all the property, interests and business of the company, within and out of that State, is, in effect, a tax both on the interstate business of that company, and on its property outside of that State, and compels the company, in order that it may do local business in connection with its interstate business, to waive its constitutional exemption from state taxation on its interstate business and on its property outside of the State.

A State can no more exact such a waiver than it can prescribe as a condition of the company's right to do local business that it agree to waive the constitutional guaranty of the equal protection of the laws, or the guaranty against being deprived of its property otherwise than by due process of law.

A decree ousting and prohibiting a company from doing intrastate business within a State for refusing to pay such a tax should not be granted, but the aid of the court should be refused because a decree would, in effect, recognize the validity of a condition which the State could not constitutionally prescribe under the guise of a fee for permission to do intrastate business.

75 Kansas, 664, reversed.

THE facts, which involve the constitutionality of certain features of the Bush act, which was under consideration in the preceding case, are stated in the opinion.

*Mr. Frank B. Kellogg,* with whom *Mr. Charles Blood Smith, Mr. Francis B. Daniels* and *Mr. Gustavus D. Fernald* for plaintiff in error.[1]

*Mr. Rush Taggart* and *Mr. Henry D. Estabrook,* with whom *Mr. John F. Dillon, Mr. George H. Fearons,* and *Mr. Charles Blood Smith* were on the brief, for plaintiff in error in No. 4, argued simultaneously herewith.[1]

*Mr. C. C. Coleman,* with whom *Mr. Fred S. Jackson,* Attorney General of the State of Kansas, was on the brief, for defendant in error in this case and in No. 4, argued simultaneously herewith.[1]

[1] For abstracts of arguments see *ante,* pp. 11 to 18.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is a proceeding in *quo warranto*, instituted by the State in the Supreme Court of Kansas against the Pullman Company, a corporation of Illinois, in which the State, by its petition, prays that the defendant be required to show by what authority it exercises within Kansas the corporate right and power of charging compensation for the use of reserved seats in its cars by day and sleeping berths during the night and of serving meals in its dining cars within the State of Kansas, such services, it is alleged, being rendered to and said fees being collected from passengers transferring upon railroads from places within the State to other places within the State; and that it be adjudged that the defendant has no authority of law for the performance of such corporate acts, powers, franchises and business in the State of Kansas, and be ousted of and from the exercise within the State of the said corporate rights and franchises and of receiving compensation therefor.

On the petition of the company the case was removed to the Circuit Court of the United States, but that court remanded it to the state court, where the defendant filed an answer resisting the relief asked on various grounds, one of which was that such relief could not be granted consistently with the power of Congress to regulate commerce among the several States, or with rights belonging to the defendant under the Constitution of the United States. A demurrer to the answer was sustained, and a decree rendered by which it was adjudged that the Pullman Company be ousted, prohibited, restrained and enjoined from transacting, as a corporation, any business of a domestic or intrastate character within the State of Kansas. The decree declared that it should in nowise affect or restrict the interstate business of the company, nor affect any of its contracts, obligations or corporate duties with or to the Government of the United States.

The business of the Pullman Company, under its charter,

was that of furnishing sleeping, parlor and tourist cars on railroads, the company reserving to itself the right to charge a certain price for the use of reserved seats in such cars during the day time and sleeping berths during the night. The company's business extended throughout the United States, where any trunk line railroad was operated. It is not necessary to go into detail as to the mode in which that business was conducted, further than to say that the business was and is principally that of interstate commerce.

This case arises under the statute of Kansas, which was examined in *Western Union Telegraph Company* v. *Kansas,* recently decided, *ante,* p. 1. Laws of Kansas, Special Session, 1898, p. 27; Gen. Stat. Kansas, 1901, Title, Corporations, p. 280; *Ib.* 1905, same Title, p. 284. The only provisions of that statute which need be recalled for the purposes of this opinion are these: "Each corporation which has received authority from the [State] charter board to organize shall, before filing its charter with the secretary of state, as provided by law, pay to the state treasurer of Kansas, *for the benefit of the permanent school fund,* a charter fee *of one-tenth of one per cent of its authorized capital,* upon the first one hundred thousand dollars *of its capital stock, or - any part thereof;* and upon the next four hundred thousand dollars, or any part thereof, *one-twentieth of one per cent;* and for each million or major part thereof over and above the sum of five hundred thousand dollars, *two hundred* dollars. . . . In addition to the charter fee herein provided the secretary of state shall collect a fee of two dollars and fifty cents for filing and recording each charter containing not to exceed ten folios, and an additional fee of twenty-five cents for each folio in excess of ten contained in any charter. The fee for filing and recording a charter shall also entitle the corporation to a certified copy of its charter. All the provisions of this act, including the payment of the fees herein provided, shall apply to *foreign* corporations *seeking to do business in this State,* except that, in lieu of their charter, they shall file with the

secretary of state a certified copy of their charter, executed by the proper officer of the State, Territory or foreign country under whose laws they are incorporated; and any corporation applying for a renewal of its charter shall comply with all the provisions of this act in like manner and to the same extent as is herein provided for the chartering and organizing of new corporations." " § 1267. Any corporation organized under the laws of another State, Territory or foreign country and authorized to do business in this State shall be subject to the same provisions, judicial control, restrictions, and penalties, except as herein provided, as corporations organized under the laws of this State." *Ib.*, §§ 1264, 1267.

Proceeding under the statute of Kansas, the Pullman Company made written application to the Charter Board for permission to engage in business in that State. The application was granted, and the Board made the following order: "The board having under consideration the application of The Pullman Company, a foreign corporation organized under the laws of the State of Illinois, for leave to transact the business of a sleeping car company in the State of Kansas; and it appearing that said foreign corporation has, in due form of law, filed with the secretary of state a certified copy of its charter, executed by the proper officers of the State of its domicile, and the written consent, irrevocable, of said corporation that actions may be commenced against it in the proper court of any county in this State in which the cause of action may arise, accompanied by a duly certified copy of the resolution of the board of directors of said corporation authorizing the proper officers to execute the same, it is, upon motion, thereupon ordered that said application be granted, and that said applicant be authorized and empowered to transact the business of operating sleeping cars, dining cars, tourist cars and other cars within the State of Kansas, and receiving money for such services, and transacting within the State its business of a sleeping car and transportation company, *provided, that this order shall not take effect and no*

*certificate of such authority shall issue or be delivered to said company until such applicant shall have paid to the State Treasurer of Kansas for the benefit of the permanent school fund the sum of fourteen thousand eight hundred dollars, being the charter fees provided by law, necessary to be paid by the corporation with a capital of $74,000,000, seeking to transact business within this State.* It is further understood, ordered and provided that nothing herein contained shall apply to nor be construed as restricting in anywise the transaction, by said applicant, of its interstate business; but that this grant of authority and requirement as to payment relate only to the business transacted wholly within the State of Kansas."

We have seen, from the provisions of the statute, as set forth in *Western Union Telegraph Company* v. *Kansas, ante,* p. 1, that it is made a *condition* of the right of a foreign corporation, seeking to do local business in Kansas, that it should apply to the State Charter Board for permission to do so. It is also prescribed as a *condition* of the right of a foreign corporation to do intrastate business in Kansas that it shall pay not only an application fee of $25; but a charter fee "*of one per cent of its authorized capital* upon the first one hundred thousand dollars *of its capital stock or any part thereof;* and upon the next four hundred thousand dollars or any part thereof, *one-twentieth of one per cent;* and for each million or major part thereof over and above the sum of five hundred thousand dollars, two hundred dollars."

The Pullman Company is admittedly engaged, as it has been continuously for many years, in commerce among all the States of the Union, as well as in intrastate business in Kansas. The Charter Board, we have seen, gave it permission to engage in intrastate business in Kansas on *condition* that it should pay to the State Treasurer *for the benefit of the permanent school fund of the State,* as a charter fee, the sum of $14,800, which is the prescribed statutory per cent of the company's authorized capital, representing *all* of its property and interests everywhere, in and out of the State, and *all* its

business, both interstate and intrastate. It does not appear how much of the single "fee" demanded by the State is to be referred to the interstate business of the company nor how much to its property outside of the State, nor what part has reference to its intrastate business or to its property within the State.

The Pullman Company refused to pay the fee so demanded, upon the general ground, among others, that the State could not, consistently with the Constitution of the United States or with the company's rights under the Constitution, make it a condition of its doing intrastate business in Kansas, that the company should pay, in the form of a fee, a specified per cent of all its authorized capital; that such a fee necessarily operated as a burden on the company's interstate business as well as a tax on its property interests outside of the State, and was hostile to its constitutional right of exemption from local taxation in reference to its property beyond the jurisdiction of the State.

For the reasons, and under the limitations, expressed in the opinion delivered in *Western Union Telegraph Company* v. *Kansas, ante,* p. 1, and without expressing any opinion upon questions raised by the pleadings but not covered by this opinion, we hold, 1. That the Pullman Company was not bound to obtain the permission of the State to transact interstate business within its limits, but could go into the State, for the purposes of that business, without liability to taxation there with respect to such business, although subject to reasonable local regulations for the safety, comfort and convenience of the people which did not, in a real, substantial sense, burden or regulate its interstate business nor subject its property interests outside of the State to taxation in Kansas. 2. That the requirement that the company, as a condition of its right to do intrastate business in Kansas, should, in the form of a fee, pay to the State a specified per cent of its authorized capital, was a violation of the Constitution of the United States, in that such a single fee, based

as it was on all the property, interests and business of the company, within and out of the State, was, in effect, a tax both on the interstate business of that company, and on its property outside of Kansas, and compelled the company, in order that it might do local business in Kansas in connection with its interstate business, to waive its constitutional exemption from state taxation on its interstate business and on its property outside of the State and contribute from its capital to the support of the public schools of Kansas; that the State could no more exact such a waiver than it could prescribe as a condition of the company's right to do local business in Kansas that it agree to waive the constitutional guaranty of the equal protection of the laws, or the guaranty against being deprived of its property otherwise than by due process of law. 3. That a decree ousting and prohibiting the company from doing intrastate business in Kansas was improperly granted, the aid of the court should have been refused and the bill dismissed, because a decree such as the State asked would, in effect, have recognized the validity of a condition which the State could not constitutionally prescribe under the guise of a fee for permission to do intrastate business.

MR. JUSTICE MOODY heard the argument of this case, participated in its decision, and approves this opinion.

On the authority of *Western Union Tel. Co.* v. *Kansas, ante,* p. 1, and for the reasons and with the reservations therein set forth in the opinion in that case, the decree must be reversed and the cause remanded for such further proceedings as may be consistent with this opinion.

*It is so ordered.*

MR. JUSTICE WHITE, concurring.

It is not disputed that the Pullman Company many years ago entered Kansas and has since therein operated its cars for the purposes of interstate as well as local business. Although the cars, in passing in and out of the State, may not have been constantly the same, it was long ago settled (*Pull-*

man's Car Company v. Pennsylvania, 141 U. S. 18) that a
proportionate number of the cars so used are to be con-
sidered 'as having a definite situs in the State, and therefore
as property permanently therein, subject to the power of
the State to tax. Taking this rule into consideration, in my
opinion the case is controlled by the reasons given for my
concurrence in Western Union Telegraph Co. v. Kansas, ante,
p. 1. That is to say, as a due proportion of the cars of the
Pullman Company used in the State of Kansas were there
permanently, I am not able to conclude that the company
or its property were not permanently in the State, and hence
that such property can be taken by the State without due
process of law, as a condition of the right to bring the property
into the State and there carry on local business. To so hold
without overruling Pullman's Car Co. v. Pennsylvania and the
many cases which have followed it, would be to place the
court in the position of saying on the one hand, for the pur-
pose of upholding the State's lawful power of taxation, that
the property of the company was permanently in the State,
and on the other of deciding, for the purpose of enabling the
State to impose an unconstitutional tax, that the company
was outside of the State and had no property permanently
employed in carrying on business therein. True it is, that
my concurrence in Western Union Telegraph Co. v. Kansas
was placed upon the ground that the company was in the
State, and consequently was not subject to be dealt with
upon the fictitious assumption that such was not the fact.
However, it was also said that I did not dissent from the
fundamental application which the court made of the com-
merce clause of the Constitution. As the reasons for this
statement differed somewhat from those expressed by the
court in its opinion, it seems to me, in view of the importance
of the subject, that it is my duty now to state as briefly as
possible my reasons for thinking that the tax in question is
repugnant to the commerce clause of the Constitution, even
under the assumption that the corporation and its property.

were out of the State, and that the tax is a condition affixed to the privilege of coming in to do a local business, and may therefore be escaped by not doing such business.

The conflict of opinion as to the decisive effect of certain prior decisions of the court exacts that the principles which this case involves should be first definitely brought into view in order that the appositeness of the cases referred to may be determined in the light of the true doctrine by which the case should be controlled. I therefore at once summarily state certain dominant propositions which are to my mind not subject to be controverted, because whatever may be the differences of opinion as to some of them considered originally, they are all so conclusively established by the previous decisions of this court as to be now beyond dispute.

1. A State may not exert its concededly lawful powers in such a manner as to impose a direct burden on interstate commerce. This is so elementary as to require no reference to the multitude of authorities by which it is sustained.

2. Even though a power exerted by a State, when inherently considered, may not in and of itself abstractly impose a direct burden on interstate commerce, nevertheless such exertion of authority will be a direct burden on such commerce if the power as exercised operates a discrimination against that commerce, or, what is equivalent thereto, discriminates against the right to carry it on. *Darnell* v. *Memphis*, 208 U. S. 113; *Am. Steel & Wire Co.* v. *Speed*, 192 U. S. 500, and authorities there cited.

3. Subject to constitutional limitations, the States have the power to regulate the doing of local business within their borders. As a result of this power, and of the authority which government may exert over corporations, the States have the right to control the coming within their borders of foreign corporations. In cases where this power is absolute the States may affix to the privilege such conditions as are deemed proper, or, without giving a reason, may arbitrarily forbid such corporation from coming in. When, therefore,

in a case where the absolute power to exclude obtains, a condition is affixed to the right to come into a State and a foreign corporation avails of such right, it may not assail the constitutionality of the condition because by accepting the privilege it has voluntarily consented to be bound by the condition. In other words, in such case the absolute power of the State is the determining factor and the validity of the condition is immaterial. This doctrine finds, in the decided cases, no terser and clearer statement than that expressed in the opinion in *Horn Silver Mining Company* v. *New York*, 143 U. S. 305. In that case, a manufacturing company, organized under the laws of Utah, was sought to be made liable for a tax on the franchise of carrying on in the State of New York a manufacturing business. It contested liability on the ground that the tax was repugnant to the Constitution of the United States. The court, in deciding that the constitutionality of the burden was an irrelevant consideration because of the absolute power of the State to impose it as a condition on the right of the corporation to come into the State and do a manufacturing, and therefore local business, said, speaking of the power of the State (p. 315):

"Having the absolute power of excluding the foreign corporation the State may, of course, impose such conditions upon permitting the corporation to do business within its limits as it may judge expedient; and it may make the grant or privilege dependent upon the payment of a specific license tax, or a sum proportioned to the amount of its capital. No individual member of the corporation, or the corporation itself, can call in question the validity of any exaction which the State may require for the grant of its privileges. It does not lie in any foreign corporation to complain that it is subjected to the same law with the domestic corporation."

And in a passage of the opinion previous to the one just quoted, concerning the right of a State, where its power to exclude was absolute, to impose such condition as it pleased, it was observed (p. 314):

"This doctrine has been so frequently declared by this court that it must be deemed no longer a matter of discussion, if any question can ever be considered at rest."

In addition, the following cases either directly, express or by fair implication must be taken as sustaining the right of the State, where it has the absolute power to exclude, to affix whatever condition it deems proper to the right of a foreign corporation to come in, and the consequent inability of such corporation after accepting the privilege to assail the constitutionality of the condition: *Paul* v. *Virginia*, 8 Wall. 168; *Postal Telegraph Co.* v. *Charleston*, 153 U. S. 692; *Hooper* v. *California*, 155 U. S. 648; *Waters-Pierce Oil Co.* v. *Texas*, 177 U. S. 28; *Pullman Co.* v. *Adams*, 189 U. S. 420; *Allen* v. *Pullman's Palace Car Co.*, 191 U. S. 171; *Security Mut. Ins. Co.* v. *Prewitt*, 202 U. S. 246; *National Council* v. *State Council*, 203 U. S. 151.

4. The absolute power of the State, as stated in the preceding proposition, does not include the right to exclude a foreign corporation from doing in a State interstate commerce business, since the regulation of such business is vested by the Constitution in Congress, and the States are impotent, as stated in the first and second propositions, to directly burden the right to do such business or to discriminate against those doing it. *Crutcher* v. *Kentucky*, 141 U. S. 47. And, indeed, by necessary implication, the want of power in the States to exclude corporations as well as individuals from carrying on within their borders interstate commerce results, by implication, from the decisions in the cases previously cited under proposition 3. This is aptly illustrated by the *Horn Silver Mining case*, where, after stating, in the clearest way, the absolute power of the State, generally speaking, to exclude a foreign corporation, it was declared (143 U. S. 314–315):

"Only two exceptions or qualifications have been attached to it in all the numerous adjudications in which the subject has been considered, since the judgment of this court was announced more than half a century ago in *Bank of Augusta*

v. *Earle*, 13 Pet. 519.   One of these qualifications is that the
State cannot exclude from its limits a corporation engaged in
interstate or foreign commerce, established by the decision
in *Pensacola Telegraph Co.* v. *Western Union Telegraph Co.*,
96 U. S. 1, 12.   The other limitation on the power of the State
is, where the corporation is in the employ of the General Gov-
ernment, an obvious exception, first stated, we think, by the
late Mr. Justice Bradley in *Stockton* v. *Baltimore & New York
Railroad*, 32 Fed. Rep. 9, 14.   As that learned justice said:
'If Congress should employ a corporation of ship-builders to
construct a man-of-war, they would have the right to purchase
the necessary timber and iron in any State of the Union.'
And this court, in citing this passage, added, 'without the
permission and against the prohibition of the State.'   *Pembina
Mining Co.* v. *Pennsylvania*, 125 U. S. 181, 186."

Let me then test the question for decision by the light of
these principles.

As it is obvious that the Pullman Company, in so far as it
was engaged in interstate commerce within the State' of
Kansas, was independent of the will of the State, it follows
that the State had no absolute power to exclude the corpora-
tion, and therefore no authority to impose an unconstitutional
burden as the price for the privilege of doing local in con-
junction with the interstate commerce business.   The power
to exclude in such a case being only relative, affords no war-
rant for the exertion by the State of an absolute prohibition.
That is to say, the exerted power could not in the nature of
things be wider than the authority in virtue of which alone it
could be called into play.   Moreover, to me it seems that where
the right to do an interstate commerce business exists, without
regard to the assent of the State, a state law which arbitrarily
forbids a corporation from carrying on with its interstate
commerce business a local business, would be a direct burden
upon interstate commerce and in conflict with the principles
stated in proposition 1.   This follows, since the imposition on
a corporation which has the right to do interstate commerce

business within the State of an unconstitutional burden for the privilege of doing local business is, in my opinion, the exact equivalent of placing a direct burden on its interstate commerce business. It is not by me doubted that as a practical question the arbitrary prohibition against doing a local business imposed on one engaged in and having the right to engage in interstate commerce is to burden that business. But passing, for argument's sake, the considerations just stated, if a State in express terms enacted that all foreign corporations which availed of the right granted them by the Constitution of the United States to carry on interstate commerce within the State without the previous consent of the State should, as a penalty for not obtaining that consent, be deprived of all right to transact local business, it would not, I assume, be contended that such an enactment was not a discrimination against the corporations to which it applied because of their possession of a right conferred upon them by the Constitution of the United States. And yet such must be the direct and immediate result of applying an absolute act of exclusion to corporations who are not subject to such absolute exercise of power, because of the right bestowed upon them by the Constitution of the United States to carry on within a State an interstate commerce business. Nor is it an answer to say that, as a State may exclude a foreign corporation from doing local business, the exertion of its lawful power may not be prevented because a bad reason is given or an illegal condition imposed, since the power exerted is the test and not the reason which has been given for exerting the power. But the proposition in effect assumes the question at issue, since however controlling it may be conceded to be when applied to a case where the absolute power to exclude exists, it can have no application to a case where the power of the State is relative, because it may not extend to prohibiting the doing of an interstate commerce business. In such a case the limitation upon the power operates not only to forbid the exclusion, as the result of the express enactment

of an unconstitutional condition, but also in the nature of things prohibits the absolute exclusion, although the reason for the attempted exertion of such a power be not given. In other words, where the power to exclude is absolute no inquiry as to the reasons for its exertion need be resorted to in order to determine its constitutionality. But, where the power is only relative, because it may not be exerted under particular conditions and circumstances, the violation of the Constitution cannot be accomplished by a failure to express the reason for the exclusion, and thus absolute power be exerted where such power does not exist. The controlling influence of the Constitution may not be destroyed by doing indirectly that which it prohibits from being done directly.

It is to be observed that the conclusions just expressed take away from the States no lawful power. It leaves to the States the right to exert absolute authority where such power is possessed, and simply requires that where, as a result of the Constitution of the United States, the power is not absolute but is merely relative, not only the right of regulation but likewise the right to exclude must be exerted conformably to the requirements of the Constitution of the United States; that is, in such a manner as not, either directly by the expression of a condition, or indirectly by its non-expression, to deprive of rights secured by that instrument.

The principal cases relied upon to establish that the prior decisions support the right of the States to impose the unconstitutional tax here in question are reviewed in the opinion of the court, and I might well rest content with that review. But, in addition, it to me seems that none of the cases relied upon are apposite here, for two obvious reasons, because they either involved the exercise of state power concerning subjects over which the authority of the State was absolute or considered state burdens which were upheld as being in effect, neither direct burdens upon interstate commerce nor discriminatory against such commerce.

A very summary reference to the cases will be made for

the·purpose of indicating why this is said. *Paul* v. *Virginia,* 8 ·Wall. 168, involved the validity of a state statute ·which prescribed certain conditions for the doing of the business of insurance within a State by a foreign insurance company, and it was held that such business was not commerce, and therefore was within the absolute regulating power of the States. *Horn Silver Mining Company* v. *New York,* 143 U: S. 305, as previously shown, involved no question of interstate commerce, but the right of a foreign corporation to carry on in a State a manufacturing business without compliance with the laws of the State. And although the ruling of the court, as heretofore stated, was in express terms placed upon the absolute power of the State over the subject, the court was careful to point out that such power did not embrace the right to exclude a foreign corporation from doing an interstate commerce business in the State or extend to excluding a corporation chartered by the United States for governmental purposes. *Postal Telegraph Co.* v. *Charleston,* 153 U. S. 692, involved a tax concerning which the court said (p. 699): "The express terms of the ordinance restrict the tax to 'business done exclusively within the city of Charleston, and not including any business done to or from points without the ·State, and not including any business done for the Government of the United States, its officers or agents.'" It is · certain that the burden was sustained on its inherent merit as a purely lawful tax on a subject within the State's authority and not as an unconstitutional tax on interstate commerce, which, although void, was to be enforced because it was a mere condition for the privilege of doing local business, which privilege had been accepted. This is certain, since the court said (p. 695): "That this license is not a condition upon which the right to do business depends, but is a tax, is shown by the case of *Home Insurance Co.* v. *City Council,* 93 U. S. 116, 122." How the ruling thus made is applicable here my mind does not perceive. The distinction between this case and that is but the difference which exists between

the exertion of a lawful power and the attempt to violate the Constitution by doing that which it forbids to be done. The gulf which separates the case referred to from this, it may be, ce be made plainer by observing that this case involves no issue as to the right of a State to lawfully tax the local business of corporations, whether domestic or foreign. That right is fully conceded. The only right here challenged is the authority of a State to impose an unconstitutional tax and validate the tax by making the payment of the unlawful tax a condition of the right to do a local business. And this upon the false assumption that absolute power to exclude exists; that is, to impose an unlawful tax and sustain it by another unlawful assumption of power, a process of reasoning which, to my mind, must rest on the proposition that in deciding questions of constitutional power it is to be held that two wrongs make a right. *Hooper* v. *California*, 155 U. S. 648, was a case involving only the right of a State to absolutely control the doing of insurance business within the State, and the doctrine of *Paul* v. *Virginia* was reiterated. The court, however, was sedulous to declare that as that particular subject was not commerce, the authority of the State was absolute and not relative, but it expressly pointed out the limitation upon the absolute power which would obtain where a right arose in favor of a corporation under the Constitution of the United States to engage within the State in interstate commerce. In *Waters-Pierce Oil Company* v. *Texas*, 177 U. S. 28, the oil company had accepted a permit from the State of Texas to engage for the period therein stated in local as well as interstate commerce within the State, upon the conditions therein set forth. No question was raised as to what would have been the rights of the company had it gone into the State for the purpose of transacting therein a purely interstate commerce business without the consent of the State. Indeed, the decision proceeded upon the theory that no such question was involved in the case, since it was assumed in the opinion that under the circumstances of the case the power

of the State was absolute and not relative. *Paul* v. *Virginia* and cases of that character were cited. *Hooper* v. *California* was referred to and the exception as to interstate commerce business which that case enunciated was pointed out. It was declared that the case could have been rested upon the *Hooper case* without saying anything further, a conclusion wholly incompatible with any other conception than that the right recognized was based upon the absolute power of the State and did not come within the exception based upon the right to do an interstate commerce business, even by a foreign corporation, which the *Hooper case* had announced and which the case of *Horn Silver Mining Company* had, in effect, treated as being as well established as the principle of absolute power. It is true that in *Pullman Co.* v. *Adams*, 189 U. S. 420, and *Allen* v. *Pullman's Palace Car Co.*, 191 U. S. 171, the taxes which were assailed as invalid were treated as conditions imposed for the privilege of carrying on local business, and which were therefore considered to be optional, as the right to escape payment would result upon discontinuing the doing of the local business. But the taxes in question in those cases were not levied upon interstate commerce, either directly or indirectly, but only upon the business done within the State, and therefore substantially involved no question of the absolute right of the State to impose an unconstitutional condition where the power of the State was not absolute but only relative. No reference was made in the opinion to the distinction stated in the previous cases between the absolute power to exclude, generally considered, and the relative character of that power where the foreign corporation possessed the power to do an interstate commerce business, irrespective of the consent of the State. *Security Mutual Insurance Company* v. *Prewitt*, 202 U. S. 246, involved the right of the State to deal with the business of insurance, a matter purely of state concern, involving interstate commerce in none of its aspects; and the case of *National Council* v. *State Council*, 203 U. S. 151, also involved the right of a

State to control the doing within the State of a business purely local in character as distinct from an interstate commerce business.

Moreover, none of the cases referred to prevent me, in this case, from acting upon my independent convictions, even if it be conceded that expressions may be found in the opinions in some of the cases which, when separated from their context and apart from the subject-matter of the controversies which the cases presented, would tend to conflict with the views I have expressed. This is said because certain is it that in none of the cases is the slightest reference made to the distinction between the absolute and relative power which this case involves and the direct burden which must result to interstate commerce from the attempt to exert absolute power, where, as the result of the interstate commerce clause of the Constitution, relative power alone obtains. When first after the duty came to me of taking part in the work of the court the question arose of the right of a State in cases where it had absolute authority to impose an unconstitutional condition as a prerequisite to the right to do local business, my individual convictions were suppressed and my opinion yielded because of the conception that it was my duty to enforce in such a case the previous rulings of the court, however much as an original question I would have held a contrary view. But because my convictions were thus yielded in such a case affords no reason why I now should assent to extending the doctrine of the previous cases to conditions to which, in my opinion, they do not apply. And certainly this should not be done when the result of such extension of the previous cases would be to destroy the efficiency of the commerce clause of the Constitution, to restrict the powers of Congress conferred by that clause, and ultimately, by the doctrine to result from the unwarranted extension of the cases, to destroy the substantial powers of both Congress and the States and establish a system from which it would come to pass that, instead of living under a constitutional government, we would live under,

a government of unconstitutional exactions, sanctioned by means of the exertion of arbitrary and absolute power, although the right to exert such power did not exist.   .   .

MR. JUSTICE HOLMES, with whom THE CHIEF JUSTICE concurred, dissenting.

As this case has received some further discussion beyond that in *Western Union Telegraph Co.* v. *Kansas,* I will contribute my mite. I do not care to add to what I said the other day as to the supposed accession of rights to a corporation because it already has property in the State. Argument from *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18, is excluded by *New York Central Railroad* v. *Miller,* 202 U. S. 584, which shows that the · question whether there is any necessary parallelism between liability to taxation elsewhere and immunity at home still is an open question, p. 598, and points out that in the earlier case the same cars were continuously receiving the protection of Pennsylvania, p. 597. In the present case it is alleged that the cars are taxed in other States as well as in Kansas, and that the property represented by the capital of the company has no *situs* in Kansas. If I thought it material I should say that on the declaration the cars were taxable at the Pullman Company's domicil more certainly than anywhere else. But I think it immaterial, for the reasons that I gave last week; and, furthermore, the argument drawn from the presence in the State of cars that can be and are rolled out of it at will cannot, I should think, be meant to be pressed.

I will add a few words on the broader proposition put forward that the Constitution forbids this charge, whether the corporation was established previously in the State or not. I do not see how or why the right of a State to exclude a corporation from internal traffic is complicated or affected in any way by the fact that the corporation has a right to come in for another purpose. It is said that in such a case

the power of the State is only relative, and in the sense that it is confined to the local business, I agree. But in the sense that it is not absolute over that local business the statement seems to me merely to beg the question that is to be discussed. I do not understand why the power is less absolute over that because it does not extend to something else. So again the proposition that a State may not subject all corporations that enter the State for commerce with other States to such conditions as it sees fit to impose upon local business, no matter how offensive the terms, seems to me a proposition not to be assumed but to be proved; or again that the arbitrary prohibition of local business is a burden on commerce among the States. I am quite unable to believe that an otherwise lawful exclusion from doing business within a State becomes an unlawful or unconstitutional burden on commerce among States because if it were let in it would help to pay the bills. Such an exclusion is not a burden on the foreign commerce at all, it simply is the denial of a collateral benefit. If foreign commerce does not pay its way by itself I see no right to demand an entrance for domestic business to help it out.

The distinction that I believe exists is sanctioned by many cases earlier than those referred to in my former dissent. That the local business of telegraph and railroad companies may be taxed by the States has been held over and over again, with full acceptance of the doctrine that *quoad hoc*, 'the power to tax involves the power to destroy,' *M'Culloch* v. *Maryland*, 4 Wheat. 316, 431, essentially the doctrine on which the power of the States to tax interstate commerce was denied. *Philadelphia & Reading R. R. Co.* v. *Pennsylvania* ('*Case of the State Freight Tax*'), 15 Wall. 232. Thus in *Western Union Telegraph Co.* v. *Alabama*, 132 U. S. 472, it was held that the telegraph company could be taxed upon all messages carried and delivered wholly within the State, and the principle was stated by Mr. Justice Miller (p. 473) to be that this "class are elements of internal commerce solely within the limits and jurisdiction of the State, and therefore subject to its taxing

power." This was by a unanimous court, and followed the intimations and decisions of earlier cases. The above passage was cited and followed in *Postal Telegraph Co.* v. *Charleston City Council,* 153 U. S. 692, when a license fee or tax was exacted in respect of local business, and the previous decisions were cited and commented upon by Mr. Justice Shiras. One of the arguments repudiated was that, the tax was a burden upon commerce among the States. I do not see how the reasoning that denies the power to tax one kind of commerce and asserts it with regard to the other can be reconciled with the denial of the power of the State to exclude the latter altogether, or to tax it for whatever sum it likes. The right to tax "in its nature acknowledges no limits." *Weston* v. *Charleston,* 2 Pet. 449, 466; *People ex rel. Bank of Commerce* v. *Commissioners of New York,* 2 Black, 620.

I think that the tax in question, for I am perfectly willing to call it a tax, was lawful under all the decisions of this court until last week. From other points of view, if I were at liberty to take them, I should agree that it deserved the reprobation it receives from the majority. But I have not heard and have not been able to frame any reason that I honestly can say seems to me to justify the judgment of the court in point of law.

THE CHIEF JUSTICE concurs in this dissent.
MR. JUSTICE McKENNA also dissents.