## CHICAGO, M., ST. P. & P. R. CO. v. UNITED STATES et al.

District Court, N. D. Illinois, E. D. June 24, 1929.

No. 8671.

H. H. Field and O. W. Dynes, both of Chicago, Ill. (Charles E. Hughes, Robert T. Swaine, and Frederick H. Wood, all of New York City, of counsel), for plaintiff.

584

Daniel W. Knowlton, Atty. Gen. (Elmer B. Collins, Sp. Asst. Atty. Gen., of counsel), for defendants.

Before ALSCHULER, Circuit Judge, and WILKERSON and LINDLEY, District Judges.

LINDLEY, District Judge. Plaintiff seeks to enjoin the enforcement of clause b of a certain proviso in an order of the Commission entered January 4, 1928, wherein that body certified that public convenience and necessity required the acquisition and operation by plaintiff of the lines of railroad formerly owned by the Chicago, Milwaukee & St. Paul Railway Company (old company), and ordered that plaintiff (new company) be authorized to issue the securities therein mentioned for the purpose of acquiring said railroad; "Provided, however," the Commission directed, "and the authority herein is granted upon the express conditions, that the applicant (a) shall not pay any underwriting fees in connection with the proposed issue of securities; and (b) shall impound in a separate fund the money received from the payment by holders of preferred and common stock in an amount equal to $4.00 a share, which shall not be paid out unless and until so authorized by order of the court in respect to payments subject to the court's jurisdiction or by this commission."

The properties of the old company came into the custody of this court by virtue of a receivership in equity on March 18, 1925, in a creditors' suit, with which were consolidated subsequent suits to foreclose outstanding mortgages. The consolidated cause duly proceeded to a decree of foreclosure, order of sale and sale.

Pending foreclosure, various committees were formed to represent the different classes of security holders of the mortgagor for the purpose of working out a plan of reorganization of the property. Two banking houses as reorganization managers, co-operating with the committees, submitted a plan of reorganization, which after extended controversy and litigation, in a somewhat modified form, was approved by the court and assented to by the interested parties. The properties were sold on December 22, 1926, for $140,000,000, and the sale, subject to certain liens which were not disturbed and are not of material importance in an adjudication of the instant question, was approved by the court on December 22, 1926. The purchasers bought the property for the benefit of the security holders in pursuance of the plan of reorganization, by which it was provided that the property should eventually be conveyed to plaintiff and that the latter would thereupon issue its securities to the reorganization managers in consideration of the conveyance of such properties and the delivery of certain cash advanced by the stockholders of the old company. Said securities were then to be distributed by the reorganization managers to the bondholders and stockholders of the old company in accordance with the plan and to the extent not so used were to be put in the treasury of plaintiff. On April 11, 1927, plaintiff contracted with the purchasers and the reorganization managers for the acquisition of the properties in accordance with the plan. The order of this court confirming the sale provided that the purchaser should not be required to take and pay for the property sold until the new company had been authorized by the proper authorities to acquire the properties and issue securities, as provided for in the reorganization plan, and that the deeds for the property should not be delivered until after the Commission had authorized plaintiff to issue the securities.

On April 11, 1927, plaintiff filed its application with the Commission seeking authority to acquire and operate the lines of railroad, to acquire control of the carriers then controlled by the old company, to issue securities in accordance with said reorganization plan, and assume certain obligations, existing against the old company. After due hearing the Commission entered the order above mentioned, containing the proviso now complained of.

Pursuant to the reorganization plan, to which the old shareholders depositing their stock agreed, these stockholders paid, through their respective committees, to the reorganization managers $28 for each share of preferred stock and $32 for each share of the common stock of the old company held by them. It was expressly provided that against these payments but $24 and $28, respectively, in bonds of the new company should be issued. The remaining $4 in the payments so to be made were not to be capitalized by the issuance of any new securities. The plan provided as to this fund of $4 per share that: "From this amount a sum equal to $1.50 per share of the existing Preferred Stock and Common Stock of the Railway Company will be set aside to provide for the compensation of the Reorganization Managers and the Committees fixed as hereinafter on page 22 provided, and the fees and disbursements of their counsel and all de-

positaries and sub-depositaries, any balance of said sum to be paid over to the new Company as additional working capital, or, if the Reorganization Managers in their discretion shall so determine, to be returned pro rata to the holders of certificates of deposit for stock." This fund is hereinafter termed "trust fund" to distinguish it from the remaining $2.50 per share constituting the entire $4 fund. The plan and reorganization agreement provided that the managers would pay over to the plaintiff all cash received by them under the reorganization plan other than the trust fund hereinbefore mentioned, which was to be retained and handled by the reorganization managers in their uncontrolled discretion in satisfying the compensation of committees' counsel, depositaries, and the managers. The provision in the plan regarding the entire $4·fund is as follows: "Payment of all the expenses of the reorganization shall be made out of that part of the payments by stockholders for which new securities are not to be issued, thus accomplishing all the foregoing advantages without expense to the creditors and without burdening the System with additional capitalization for such expenses." The following provision is also contained in the plan: "The cash requirements of $70,032,548 are to be met, as hereinafter provided, by payments of $28.00 per share by the holders of the $115,931,900 existing Preferred Stock of the Railway Company and of $32.00 per share by the holders of the $117,411,300 existing Common Stock of the Railway Company, for which only $60,698,820 of new bonds will be issued." It is clear that the purpose of these provisions was to require all expenses payable from the trust fund to be borne by the participating stockholders of the old company without expense to the creditors thereof and without burdening the new company with any capitalization for such expenses. The Commission in its report found that for the $4 per share no new securities were to be issued, and that the agreement provided as to $1.50 per share that, after the payment of expenses "any balance of said sum shall be paid over to the new company, to be organized as provided in the Reorganization Plan, as additional working capital, or, if the Reorganization Managers in their discretion should so determine, to be returned pro rata to the holders of certificates of deposit for stock." By their contract the reorganization managers, as custodians of the trust fund, contracted to satisfy all other per-

sons for the contract price or reasonable value of the services rendered by them in perfecting the reorganization and other expenses, whether the plan should be consummated or abandoned. None of these expenses were conditional upon the success of the reorganization plan other than the compensation of the reorganization managers themselves. All of the $2.50 per share not exhausted by the foreclosure costs and plaintiff's expenses was to be delivered to plaintiff.

The first question which presents itself to us is whether the language of the proviso warrants the construction placed thereon by the Commission; whether the true intent thereof was not merely to require the impounding of only that part of the $4 per share over and above the trust fund of $1.50 per share. The reorganization plan and agreement provided that: "$1.50 per share may be used by the reorganization managers in their absolute and uncontrolled discretion, * * * to pay the fees and disbursements of the counsel of reorganization managers and the committee, and the fees and disbursements of all depositaries and sub-depositaries, and if the plan shall not be abandoned to pay the compensation of the reorganization managers and committees." This compensation was one-quarter of one per cent. of the principal amount of the outstanding bonds and 20 cents per share upon the shares of outstanding stock. The plan was approved by the District Court January 19, 1927. The decree then entered provided that the deeds to plaintiff should not be delivered until the latter should have been fully authorized by the Commission to issue the securities provided in the reorganization plan or any modification thereof which might thereafter be submitted to the court. The court retained jurisdiction to pass upon modifications of the plan.

After the entry of the order now complained of, plaintiff applied to the District Court for an order directing the execution and delivery of the deeds, alleging that the Commission had authorized the plaintiff to issue the new securities and submitting with the petition a certified copy of the order of the Commission. Upon consideration thereof the court directed the execution and delivery of the deeds. It is evident that neither the court nor counsel then believed the order to have the meaning which the Interstate Commerce Commission now claims for it. The trust fund was not

in the plaintiff's possession, nor did the latter have any right to its possession. In order to give plaintiff such right, a modification of the plan would have been required, for the managers could not agree with plaintiff to turn over the fund which had been created by the contract between the stockholders and the managers and was then held under a plan which had been approved by the court after according to all stockholders an opportunity to be heard.

The petition was a representation to the court that plaintiff had accepted the order and expected to comply with the condition, but it could not comply with the order as it is now interpreted by the Commission without modifying the plan and causing the modification to be submitted to the court under the jurisdiction which had been reserved. Until such modification should be made, no one had any right to demand that the reorganization managers should turn over the fund. They were not parties to the proceedings before the Commission, and the order is not directed against them. If the District Court had been of the opinion that the intent of the order was that the plaintiff should obtain possession of the trust fund, that court undoubtedly would have required as a condition precedent either a modification of the plan, so that plaintiff could comply with the order, or the setting aside of the order by a statutory court which had jurisdiction so to do.

It is a general principle that courts will, if reasonably possible so to do, construe a statute so as to give it effect, and that when an act or an administrative order is equally susceptible of two constructions, one of which will maintain and the other destroy it, the courts will always adopt the former. 25 R. C. L. 999; Unity v. Burrage, 103 U. S. 447, 26 L. Ed. 405; Dugger v. Mechanics', etc., Ins. Co., 95 Tenn. 245, 32 S. W. 5, 28 L. R. A. 796. It is only a fair and reasonable interpretation of this order, when read in its relation to the reorganization plan and to the litigation in the District Court as to which the facts were before the Commission, to construe it as not imposing upon plaintiff a requirement that it should impound money to the possession of which it had no right, and which was covered by a contract the parties to which were not before the Commission. The requirement is "that the money received shall be impounded." Inasmuch as it was contemplated that the trust fund should never be received by plaintiff, it is apparent that the reference to $4 a share is descriptive of the payment of which the "money received" and to be impounded is a part, and that the true intent of the proviso is to require to be impounded only such part of the $4 as remained after deducting therefrom the trust fund which was not to be received. The District Court was justified in such interpretation of the proviso.

In this view the subsequent contention of the Commission, made after the property was by order of the court turned over to plaintiff, cannot serve to enlarge the scope of the proviso and to bring within its meaning and intent that part of the fund which under the plan could not have been received by the new company and was not in fact to be paid to it. The Commission could not maintain a suit to enforce an order of the tenor it insists should be given this order. It should be enjoined, therefore, in view of the construction which it now attempts to have placed upon the order, from attempting to execute the same by proceeding against plaintiff for not impounding that portion of the $4 per share, to the possession of which plaintiff had no right.

If there is any question as to the correctness of this interpretation, or if the proviso is to be construed as the Commission now contends, it seems to us there is no question as to its invalidity in so far as it applies to the trust fund of $1.50 per share. Under the Interstate Commerce Act, § 20a (49 USCA § 20a), the Commission is authorized to permit the issuance of securities if it finds that such issue "(2) (a) is for some lawful object within its corporate purposes, and compatible with the public interest, which is necessary or appropriate for or consistent with the proper performance by the carrier of service to the public as a common carrier, and which will not impair its ability to perform that service, and (b) is reasonably necessary and appropriate for such purpose." The Commission has power to grant or deny the application in part or in whole, or to grant it "(3) with such modifications and upon such terms and conditions as the Commission may deem necessary or appropriate in the premises, and may from time to time, for good cause shown, make such supplemental orders in the premises as it may deem necessary or appropriate." This language limits the jurisdiction of the Commission. That body found that the issu-

ance of the securities was compatible with the public interest; that it was necessary or appropriate for and consistent with the proper performance by the carrier of service to the public as a common carrier; that it would not impair the plaintiff's ability to perform that service; and that it was reasonable, necessary and appropriate for such service. Admittedly each part of the order must be authorized by the statute, or not at all. Obviously the terms and conditions of its order must be germane to the subject-matter, and fairly within the powers expressly delegated. The Commission as a statutory body cannot under the guise of administering this or any other provision of the law draw to itself any powers not conferred upon it by the act.

Thus it is to be observed that the Commission found the consideration for the securities to be adequate and the other conditions precedent to the exercise of its jurisdiction to exist. It appears further that the trust fund of $1.50 per share, built up by assessment of the stockholders of the old company, was not surrendered to the new company (which alone was before the Commission), was wholly uncapitalized in any new security, was in no wise subject to the jurisdiction of the new company, but was expressly retained by the reorganization managers for the express purpose of satisfying the legal expenses of the reorganization, with the option to the managers of returning any surplus to the contributing stockholders or to the new company. In this situation might the Commission, as it now contends it might, draw to itself jurisdiction of administration of such trust fund in an order approving and authorizing the securities by means of a proviso therein in the nature of a condition subsequent requiring that fund to be impounded with the Commission? Or does the proviso permit of a construction to the effect that the Commission had in mind the exercise of such jurisdiction?

The Commission is a body of limited jurisdiction. It may not directly exercise power, grant of which had been withheld by Congress. Interstate Commerce Commission v. Cincinnati, N. O. & T. P. R. Co., 167 U. S. 479, 17 S. Ct. 896, 42 L. Ed. 243; Harriman v. Interstate Commerce Commission, 211 U. S. 407, 29 S. Ct. 115, 53 L. Ed. 253; United States v. Louisville & Nashville R. Co., 236 U. S. 318, 35 S. Ct. 363, 59 L. Ed. 598; United States v. Pennsylvania R. Co., 242 U. S. 208, 37 S. Ct. 95,

41 L. Ed. 251. Owing its existence and its power to statutory enactment, it may not, by conditions subsequent attached to its approval, force a party before it to impound with it funds which do not enter into the issuance of securities, the consideration for which it finds to be adequate. Its power to regulate cannot be so exercised as to advance any policy which does not have its origin in the statute. Morrill v. Jones, 106 U. S. 466, 1 S. Ct. 423, 27 L. Ed. 267, and Waite v. Macy, 246 U. S. 606, 38 S. Ct. 395, 62 L. Ed. 892.

The Commission found that the value of the properties is somewhere between $640,000,000 and $900,000,000 and that the book value on May 1, 1927, was $707,000,-000. The total securities authorized, including preferred stock, were $569,116,549. The Commission said: "Using the lowest figure, $640,000,000, and deducting from that amount the total par value of the securities enumerated, or approximately $569,100,000 would leave $70,900,000 as representing the value of the 1,174,060 shares of common stock without nominal or par value. * * * Without expressing any opinion as to the value of the no par value common stock, it would appear that upon applying the test suggested there will remain an unmortgaged equity in the properties sufficient to permit the bondholders to assign to the stockholders an interest therein and to support the issue of stock in the amounts proposed." Then, having found that the consideration was adequate, the Commission proceeded, not to reserve jurisdiction to pass upon the adequacy thereof, but according to its present contention, to attempt to bring before it the trust fund, not capitalized, in the custody and under the control of persons and parties other than the plaintiff. Obviously if the Commission doubted the adequacy of the consideration and felt justified in the authorization of the issuance of the securities only upon the deposit of additional property of a value equivalent to the amount of the trust fund, it would have had the right so to provide in its order, but to have done so would have been to have entered an order at variance with the one before the court, which finds the consideration adequate and then, if the proviso be construed as defendant now contends it should be, arbitrarily attempts by conditions subsequent to bring before the Commission a fund over which it has no jurisdiction. Such a construction of the proviso

amounts to the assertion of arbitrary authority. Such power Congress does not possess and may not delegate. The Commission may not substitute for the standards of the act standards of its own. Southern Pacific Co. v. Interstate Commerce Commission, 219 U. S. 433, 31 S. Ct. 288, 55 L. Ed. 283.

The validity of the order in so far as it requires the impounding of the remaining $2.50 per share is also questioned. It was provided in the reorganization plan that all cash paid in by stockholders, other than the trust fund, should be paid to plaintiff, first deducting, however, expenses of the receivership and foreclosure proceedings and expenses of plaintiff in the reorganization. The $2.50 per share, less said deductions, thus became a part of the cash to be delivered to the plaintiff and used by it as a part of its cash requirements aggregating $70,-032,548. Against this cash there were to be issued only $60,698,820 in bonds, but all the property, including the cash, was to become part and parcel of the equity for the common and preferred stockholders, of a value, as intimated by the Commission, of not less than $70,000,000. So, though no part of the $2.50 was to be capitalized by the issuance of new bonds, such part of the same as remained after the payment of foreclosure expenses did become a part of the property back of the preferred and common stock. It was agreed that the stockholders should receive for each preferred share deposited one share of preferred stock and $24 par value of new bonds, and for each common share deposited one share of common stock and $28 par value of new bonds. Consequently, though no part of the $2.50 is represented by a new bond, it appears in the common and preferred capitalization of the plaintiff to the extent of that part of the same eventually received by the plaintiff.

Might the Commission insist that as to the $2.50 per share payments therefrom should be approved either by the court or the Commission and the balance impounded with the Commission as a guaranty that the new stockholders should receive the same? Apparently, the exercise of such jurisdiction is germane to the subject-matter before the Commission at the time of the entry of the order and fairly within its statutory powers. We see no valid reason why, in determining whether or not the issuance of the securities was compatible with public interests, the Commission, exercising the discretion vested in it by Congress, might not rightfully insist that the equity for the common and preferred stockholders should be subjected to the scrutiny and supervision of the Commission or the court in determining the reasonableness of the expenditures to be made from the cash therein, the balance of which was to be delivered to plaintiff. Furthermore, the actions of the plaintiff in this respect tend to indicate that it so understood the jurisdiction of the Commission and that it acquiesced in the validity of the order in so far as it applied to the $2.50 per share, for, after the Commission had entered its order, plaintiff asked this court to fix the foreclosure costs and filed with the Commission its application to pay certain other of the expenses considered chargeable to this fund, thus indicating that plaintiff considered the proviso as to the $2.50 valid, germane, and a reasonable exercise of the Commission's authority. Otherwise, obviously, it would not have voluntarily acceded thereto by following the procedure suggested by the Commission. Moreover, in plaintiff's petition filed herein it is averred that the securities of plaintiff were issued in consideration of the transfer to plaintiff of the railway properties and of the obligation of the reorganization managers to pay to the plaintiff the cash received by them other than the trust fund.

Inasmuch as the amount of the cash constituting a part of the property purchased, for which the plaintiff was to issue its securities, including bonds and stock, was not definitely fixed, but depended for final determination upon whatever the ultimate deductions on account of foreclosure and similar expenses might prove to be, it was within the Commission's discretion to extend its supervisory authority over such items, for under the act of Congress carriers may issue securities only after investigation by the Commission of the uses and purposes of the issue and the proceeds to be derived therefrom. In other words, the equity over underlying bonds in the railway properties and the cash subscribed becomes of material interest to the Commission. Consequently, in view of the comprehensive administrative duties lodged in the Commission, it was contemplated that in the exercise of its discretion it should have authority to determine the equity over underlying bonds, to examine the cash consideration going into the same, and to pass upon the reasonableness of the

items of expenses deductible therefrom in so far as the same were not properly determinable by the court. See Railroad Commission v. Southern Pac. Co., 264 U. S. 331, 44 S. Ct. 376, 68 L. Ed. 713.

As to the moneys to be delivered to the plaintiff, the Commission exercised its lawful supervisory discretion over proper deductions from said cash. The court will not interfere with the same; it will not attempt to substitute its judgment for that of the Commission in administrative matters. Procter & Gamble v. United States, 225 U. S. 282, 32 S. Ct. 761, 56 L. Ed. 1091.

What we have said has to do not only with the merits of the case, but also with the motion to dismiss. The defendant grounds its motion upon the proposition that the condition is inseparably related to the remainder of the order, concerning which the jurisdiction of the court is not invoked. Congress, however, conferred upon the court jurisdiction to enjoin or set aside so much of an order as is invalid. The statute (28 USCA § 41(28) confers jurisdiction over all "cases brought to enjoin, set aside, annul or suspend in whole or in part any order of the Interstate Commerce Commission." A statute duly enacted or an order lawfully entered may not be annulled by the imposition of conditions subsequent beyond the original power even though such power be arbitrary. Western Union Telegraph Co. v. Kansas, 216 U. S. 1, 30 S. Ct. 190, 54 L. Ed. 355; Pullman v. Kansas, 216 U. S. 56, 30 S. Ct. 232, 54 L. Ed. 378; Ludwig v. Western Union Telegraph Co., 216 U. S. 148, 30 S. Ct. 280, 54 L. Ed. 423; Southern R. Co. v. Green, 216 U. S. 400, 30 S. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247; Terral v. Burke Construction Co., 257 U. S. 529, 42 S. Ct. 188, 66 L. Ed. 352, 21 A. L. R. 186; Fidelity & Deposit Co. v. Tafoya, 270 U. S. 426, 46 S. Ct. 331, 70 L. Ed. 664; Frost & Frost Trucking Co. v. Railroad Commission, 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457; Hanover Fire Ins. Co. v. Harding, 272 U. S. 494, 47 S. Ct. 179, 71 L. Ed. 372, 49 A. L. R. 713. Even less tenable is the proposition that an administrative body may condition the validity of its lawful order upon void arbitrary provisos. An otherwise valid order is not affected by the addition of an invalid condition.

We conclude that, properly construed, the order did not affect the trust fund arising from the $1.50 per share; that the same was not within the Commission's jurisdiction; that if the true intent of its order was to impound such part of the cash, to that extent its order is arbitrary and invalid; that it was properly within its jurisdiction to insist that the cash which under the agreement would eventually go to the plaintiff should be subject to the Commission's supervisory jurisdiction to the extent that the payments therefrom were not fixed by this court. The plaintiff's bill must prevail in so far as it applies to the trust fund arising from the $1.50 per share and must be denied as to any and all other prayers for relief.

A decree in accordance with this opinion may be submitted.