## LUDWIG, SECRETARY OF STATE OF ARKANSAS, *v.* WESTERN UNION TELEGRAPH COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

No. 45.   Argued April 13, 14, 1909.—Decided February 21, 1910.

On the authority of *Western Union Telegraph Company* v. *Kansas, ante,* p. 1, and *Pullman Car Company* v. *Kansas, ante,* p. 55, held that:

A state statute which requires a foreign corporation engaged in interstate commerce to pay, as a license tax or fee for doing intrastate business, a given amount on its entire capital stock whether employed within the State or elsewhere, directly burdens the interstate business of such corporation and its property outside the jurisdiction of the taxing State and is unconstitutional and void; and so held as to the Wingo law of Arkansas of May 13, 1907.

Publication by proclamation by a state officer in his official capacity that a foreign corporation engaged in interstate and local business is not authorized, but is forbidden from continuing, to do local business would produce irreparable injury to such corporation; and, in order to prevent such contemplated or threatened injury a court of equity may enjoin the state officers from issuing such proclamation, if the state statute on which the contemplated action is based is unconstitutional.

An action brought by a corporation against a state officer to obtain such an injunction is not an action against the State within the meaning of the Eleventh Amendment. *Western Union Telegraph Company* v. *Andrews, post,* p. 165.

THE facts which involve the constitutionality of certain provisions of the Wingo Act of Arkansas applicable to foreign corporations are stated in the opinion.

*Mr. Hal L. Norwood,* Attorney General of the State of Arkansas, with whom *Mr. Joseph M. Hill, Mr. William F. Kirby* and *Mr. Otis T. Wingo* were on the brief for appellant in this case and for appellee in No. 8, argued simultaneously herewith.[1]

A State has plenary power to prescribe such terms as pleases it upon which foreign corporations may enter and do business.

---

[1] For decision in No. 8, see p. 165, *post.*

It has power to refuse admission to a foreign corporation not engaged in interstate commerce or governmental service, and to prescribe terms upon which a foreign corporation engaged in interstate commerce and the service of the Government may do intrastate business. It has the power to prevent a foreign corporation from doing business at all within its borders, unless such prohibition is so conditioned as to violate the Federal or its own Constitution. *Hu... mond Packing Co.* v. *Arkansas*, 212 U. S. 322; *American Smelting Co.* v. *Colorado*, 204 U. S. 103; *Security Life Ins. Co.* v. *Prewett*, 202 U. S. 246; *Hooper* v. *California*, 155 U. S. 648; *Allgeyer* v. *Louisiana*, 165 U. S. 578; *Osborne* v. *Florida*, 164 U. S. 650; *Pullman Co.* v. *Adams*, 189 U. S. 420; *Armour Packing Co.* v. *Lacy*, 200 U. S. 226; *Kehrer* v. *Stewart*, 197 U. S. 60; *State* v. *Lancashire Ins. Co.*, 66 Arkansas, 466; *Woodson* v. *State*, 69 Arkansas, 528; *Western Union Tel. Co.* v. *State*, 82 Arkansas, 302; *Waters-Pierce Oil Co.* v. *Texas*, 177 U. S. 28; *Orient Ins. Co.* v. *Daggs*, 172 U. S. 557; *John Hancock M. Life Ins. Co.* v. *Warner*, 181 U. S. 73.

It may prescribe as such condition a forfeiture of its right to do business upon removal of a cause to the Federal court or the bringing of suit in the Federal court without the consent of the opposite party. *Doyle* v. *Continental Ins. Co.*, 94 U. S. 535; and see *Security M. Life Ins. Co.* v. *Prewett*, 202 U. S. 246, holding a statute valid that prescribed such forfeiture in the exact terms of the Wingo Act.

The court was without jurisdiction, this being a suit against the State.

The act fixes a license fee or tax to be paid by foreign corporations to the State for its privilege or franchise of allowing such corporations to do business within the State upon the same terms and conditions as domestic corporations.

The penalty suits by the State's prosecuting attorneys in its courts, for the collection of its said license tax for its benefit, is its method of enforcing the payment of same. The State is the real party in interest against which the relief in these cases

is asked and the judgments would operate. These suits are brought to test the constitutionality of the statute,—not to prevent a trespass of individuals against its property. *In re Ayers*, 123 U. S. 443, 487; *Fitts* v. *Magee*, 172 U. S. 516, 528, and cases reviewed in the opinion below. See *Western Union Tel. Co.* v. *Andrews*, 154 Fed. Rep. 95. *Ex parte Young*, 209 U. S. 124, is not applicable.

The Wingo Act is not in violation of the Telegraph Company's rights under act of Congress of 1866, nor an interference with interstate commerce.

The terms "seeking to do business in this State" and "doing business in this State" mean and include only intrastate business, for such only has the State power to regulate. *Western Un. Tel. Co.* v. *State*, 82 Arkansas, 309, 321, and cases cited. And see also *Osborne* v. *Florida*, 164 U. S. 650; *Pullman Co.* v. *Adams*, 189 U. S. 420.

Like expressions in statutes of North Carolina and Georgia have been similarly construed and the cases affirmed by this court. *Armour Packing Co.* v. *Lacy*, 200 U. S. 226; *Kehrer* v. *Stewart*, 197 U. S. 60. Other cases in point are: *State* v. *Telegraph Co.*, 27 Montana, 394; *State* v. *Wagner*, 77 Minnesota, 483; *Western Union Tel. Co.* v. *State*, 90 Pac. Rep. (Kans.) 307; *Commonwealth* v. *Gagne*, 153 Massachusetts, 205; cited in 188 Massachusetts, 241; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Norfolk & Western Ry. Co.* v. *Pennsylvania*, 136 U. S. 114.

The expression, "now or hereafter doing business in this State," and others of like import, as "do any business in this State," etc., having received a judicial interpretation, are presumed to be used in that sense in this act, there being nothing in the act to indicate a contrary intent. *Beasley* v. *Equitable Securities Co.*, 72 Arkansas, 610.

When the legislature adopts the statute of another State the interpretation of such statute by the courts of that State is adopted with it, and how much the more should our own court's construction of an act reënacted be conclusive in its

interpretation. *Nebraska Nat. Bank* v. *Walsh*, 68 Arkansas, 438; *McNutt* v. *McNutt*, 78 Arkansas, 352.

Kirby's Digest, § 7946, is part of the act (§ 10) of March 31, 1885, under the terms of which the company claims to have contracted with the State for the right to do intrastate business, and the Supreme Court of the State says the act does not even apply to a company not authorized to do intrastate business. Such is the construction of this statute by the Supreme Court of the State of Arkansas, and it is binding here. *Hammond Packing Co.* v. *Arkansas*, 212 U. S. 322; *Armour Packing Co.* v. *Lacy*, 200 U. S. 226; *Kehrer* v. *Stewart*, 197 U. S. 60; *Pullman Co.* v. *Adams*, 189 U. S. 426; *Osborne* v. *Florida*, 164 U. S. 650.

The act is not in violation of the Telegraph Company's contract with the State, nor does it deprive it of its property without due process of law.

This law was passed by the State to enable her citizens to enforce without great inconvenience their just demands against foreign corporations doing business in this State under the comity existing between the States. See *Conn. Mut. Life Ins. Co.* v. *Spratley*, 172 U. S. 621; *Am. Smelting Co.* v. *Colorado*, 204 U. S. 103, distinguished.

*Mr. Rush Taggart* and *Mr. Henry D. Estabrook*, with whom *Mr. George B. Rose* was on the brief, for appellee in this case and appellant in No. 8, argued simultaneously herewith.[1]

By discriminating between foreign and domestic corporations, the statute complained of denies to the Telegraph Company the equal protection of the law.

While a State may, if it sees fit to do so, exclude from its territory any foreign corporation not engaged in interstate commerce or in the service of the United States, if the State does admit the corporation within its borders, it is then a person entitled to the protection afforded by the Fourteenth Amendment. *Blake* v. *McClung*, 172 U. S. 239.

---

[1] For decision in No. 8, see p. 165, *post*.

When foreign corporations have entered a State with its permission, and made permanent investments therein, they cannot be discriminated against in favor of domestic corporations. To do so would be to deny them the equal protection of the law. *American Smelting Co.* v. *Colorado,* 204 U. S. 103.

The act forbids a foreign corporation to bring suit in the United States courts, and forfeits its right to do business in the State in the event of its instituting such an action, while it contains no restriction upon the right of domestic corporations to sue in those courts. This is a valuable right conferred by Congress, in pursuance of the authority of the Constitution of the United States, of which the State cannot deprive a citizen or a corporation. *Insurance Co.* v. *Moore,* 20 Wall. 425; *Barron* v. *Burnside,* 121 U. S. 180; *So. Pac. Ry. Co.* v. *Denton,* 146 U. S. 200; *Martin* v. *R. R. Co.,* 151 U. S. 673; *Barrow S. E. Co.* v. *Kane,* 170 U. S. 100.

The equal protection of the law is a pledge of the protection of equal laws. *Yick Wo* v. *Hopkins,* 118 U. S. 369.

The act violates the contract between the State and the Telegraph Company and deprives the latter of its property without due process of law.

A contract existed under the Arkansas act of March 31, 1885, Acts, p. 176, with the terms whereof the Telegraph Company has complied. See *United States* v. *Central Pacific Railroad Co.,* 118 U. S. 235; *St. Louis* v. *Western Union Tel. Co.,* 148 U. S. 103; *New Orleans* v. *Southern Telephone and Telegraph Co.,* 40 La. Ann. 41; *Monongahela Co.* v. *United States,* 148 U. S. 329; *Montgomery County* v. *Bridge Co.,* 110 Pa. St. 54, 68; *Walla Walla* v. *Walla Walla Water Co.,* 172 U. S. 1; *Pearsal* v. *Great Northern Railway Co.,* 161 U. S. 661; *City Railway Co.* v. *Citizens' Railroad Co.,* 166 U. S. 587; *Powers* v. *Detroit & Grand Haven Railway Co.,* 201 U. S. 544.

The fact that no money was paid to the State does not make the contract void for want of consideration. *Dartmouth College* v. *Woodward,* 4 Wheat. 637; *Erie Railroad Co.* v. *Pennsylvania,* 153 U. S. 628.

· The act infringes the rights conferred on the Telegraph Company by the act of. Congress of July 24th, 1866, as an agency of the United States Government and as an instrumentality of commerce.

The Telegraph Company under that act, is. an instrumentality of the Government of the United States, which a State cannot exclude. from its borders and such Telegraph Company is likewise an instrumentality of interstate commerce, the exclusive power to regulate which is vested in the Congress of the United States. *Pensacola Telegraph Company* v. *W. U. Tel. Co.,* 96 U.,S. 1; *Telegraph Co.* v. *Texas,* 105 U. S. 460; *W. U. Tel. Co.* v. *Massachusetts,* 125 U. S. 530; *Leloup* v. *Port of Mobile,* 127 U. S. 640; *W. U. Tel. Co.* v. *Penna. R. R. Co.,* 195 U. S. 540; *W. U. Tel. Co.* v. *St. Louis,* 148 U. S. 92.

Even if the act be thus interpreted by the state authorities, as applying only to domestic business it cannot be sustained under *Osborne* v. *Florida,* 164 U. S. 650; *Pullman Company* v. *Adams,* 189 U. S. 420; *Allen* v. *Pullman Palace Car Co.,* 191 U. S. 171; *New York* v. *Penna. R. R. Co.,* 192 U. S. 21, as in those cases, the acts sustained by this court either expressly separated the local business of the companies affected from the interstate business, and left it optional with the company affected, to continue its domestic business, or to discontinue it, or the act had been so interpreted by the courts of the State, and this court simply accepted such construction of the act as made by the state courts. · To the same effect: *The Trade-Mark Cases,* 100 U. S. 82; *James* v. *Bowman,* 190 U. S. 127.

Mr. Justice Harlan delivered the opinion of the court.

The Western Union Telegraph Company, a corporation of New York, doing business, both interstate and intrastate, in Arkansas, as it had done for many years, brought this suit against O. C. Ludwig, Secretary of State of Arkansas, for the purpose of obtaining a decree that the statute of that State of May 13th, 1907, entitled "An Act to permit foreign corpora- ·

tions to do business in Arkansas and fixing fees to be paid by all corporations," Acts of Ark., 1907, p. 744, was unconstitutional, null and void, and enjoining the defendant, in his official capacity, from attempting to revoke, or proclaiming through official newspaper publications that he had revoked, the authority of the plaintiff to do business in Arkansas, or that it had no right to continue doing business in that State. The plaintiff, in its bill, asked such other and further relief as the case might require and as might seem just.

A temporary injunction was issued, and thereafter the defendant demurred and answered at the same time. The demurrer was on these grounds: That the court was without jurisdiction to hear and determine the case, "the same being in effect a suit against the State" by a citizen of another State to prevent the enforcement of one of its criminal or penal statutes; that the facts stated in the bill are not sufficient to constitute a cause of action nor to warrant the relief asked; and that the bill was wholly without equity. The answer denied all the material allegations of the bill.

Subsequently, the plaintiff, by leave of the court, filed an amendment of its bill. To that amendment no answer was made, but all parties being present, the cause was heard, without objection, on the demurrer to the bill. The demurrer was overruled, and the defendant having elected not to plead further, the injunction previously granted was made perpetual. From that order the present appeal was prosecuted.

The above statute, known as the Wingo Act, whose constitutionality is questioned by the plaintiff, is as follows (the italics being ours):

"§ 1. Every company or corporation incorporated under the laws of any other State, Territory or county, including foreign railroad and foreign fire and life insurance companies, *now or hereafter doing business in this State,* shall file in the office of the Secretary of State in this State a copy of its charter or articles of incorporation or association, or a copy of its certificate of incorporation, duly authenticated and certified by the

proper authority, together with a statement of its assets and liabilities and the amount of its capital employed in this State, and shall also designate its general office or place of business in this State, and shall name an agent upon whom process may be served. *Provided*, before authority is granted to any foreign corporation to do business in this State, it must file with the Secretary of State a resolution adopted by its board of directors, consenting that service of process upon any agent of such company in this State, or upon the Secretary of State of this State, in any action brought or pending in this State, shall be a valid service upon said company; and if process is served upon the Secretary of State it shall be his duty to at once send it by mail, addressed to the company at its principal office; and if any company shall, without the consent of the other party to any suit or proceeding brought by or against it in any court of this State, remove said suit or proceeding to any Federal court, or shall institute any suit or proceeding against any citizen of this State in any Federal court, it shall be the duty of the Secretary of State to forthwith revoke all authority to such company and its agents to do business in this State, and to publish such revocation in some newspaper of general circulation published in this State; and if such corporation shall *thereafter continue to do* business in this State, it shall be subject to the penalty of this act *for each day* it shall continue to do business in this State after such revocation.

" § 2. Any foreign corporation *which shall fail to comply with the provisions of this act*, and shall do *any* business in this State, shall be subject to a fine of not less than $1,000, to be recovered before any court of competent jurisdiction, and all such fines so recovered shall be paid into the general revenue fund of the county in which the cause of action shall accrue, and it is hereby made the duty of the prosecuting attorneys to institute said suits in the name of the State, for the use and benefit of the county in which the suit is brought, and such prosecuting attorney shall receive as his compensation one-fourth of the amount recovered, and as an additional penalty, any

foreign corporation which shall fail or refuse to file its articles of incorporation or certificate as aforesaid, cannot make *any contract in this State which can be enforced by it either in law or in equity,* and the complying with the provisions of this act after suit is instituted shall in no way validate said contract.

" § 3. That all corporations hereafter incorporated in this State and *all foreign corporations seeking to do business in this State,* shall pay into the treasury of this State *for the filing of said articles* a fee of $25 *where the capital stock is* $50,000 or under; $75 where the capital stock is over $50,000 and not more than $100,000; and $25 additional for each $100,000 of capital stock.

"Any foreign mutual corporation having no capital stock shall be required to pay to the Secretary of State for filing its articles of incorporation the sum of $500. *Provided, however,* nothing in this section shall apply to fraternal orders that write insurance.

" § 4. That Act 185, approved April 17, 1907, and entitled 'An Act to provide a manner in which foreign corporations may become domestic corporations and for other purposes,' and all laws and parts of laws in conflict herewith, be and the same are, hereby repealed; and that this act take effect and be in force from and after its passage." Acts of Ark. 1907, p. 744.

As the case was decided on demurrer to the bill, the material facts properly alleged are to be taken as true on this hearing. The case made by the plaintiff in its bill is substantially as will be now outlined.

The Telegraph Company was organized in 1851, and immediately thereafter began the work of constructing and operating telegraph lines. Its system extended throughout the United States and Canada, and connected with lines in Mexico and Central and South America by means of submarine cables, and with telegraph systems of foreign countries.

Among the lines so constructed and forming a component part of the company's system and connecting with its main office in New York, are lines within Arkansas, most of which

were constructed since 1867, in which year the company ac-cepted the terms and conditions of the act of Congress of July 24th, 1866, entitled "An act to aid in the construction of telegraph lines and to secure to the Government the use of the same for postal, military and other purposes." 14 Stat. 221, c. 230; Rev. Stat., §§ 5263 to 5269 *inclusive.*

It should be stated in this connection that the bill alleges that the company's lines within Arkansas are upon the public domain and upon the military and post roads of the United States, are part of the postal routes and postal establishment of the United States, and as such the complainant has under the Constitution and laws of the United States the power and is under obligation to transmit all messages for the Govern-ment and for the public generally as much and as fully with respect to messages between points within the said State as interstate messages. The company's lines within Arkansas were constructed with the consent and permission of the State, certainly without objection on its part, and in accordance with its laws. The amount which the company, up to the bringing of this suit, had invested in lines within Arkansas was $153,000 and continuously since their construction the Telegraph Com-pany has used them "for the transmission of telegraph mes-sages for the Government of the United States, and the several departments thereof, *and for the public,* as an instrumentality of the Postal Department and *of commerce wholly within the State of Arkansas,* and also for interstate commerce and com-merce between points in said State and foreign countries, and thus said telegraph lines have been continuously employed in domestic, interstate and foreign commerce since their con-struction."

The above act of 1907 requires that every foreign corpora-tion doing or seeking to do business in the State should file in the office of the Secretary of State a copy of its charter or arti-cles of incorporation, duly authenticated, together with a statement of its assets and liabilities and the amount of its capital employed in the State, and designate its general office

or place of business therein, and the name of an agent upon whom process in any action brought or pending in the State may be served. The company tendered to the Secretary of State a duly authenticated copy of a resolution of the Board of Directors, assenting to the designation of an agent upon whom process against the company might be served; also, the above required statement; "and offered to the Secretary of State [who claimed to proceed under the above act of 1907] all reasonable fees for the filing and recording of the said papers." But the Secretary of State refused and still refuses to *file the same* unless the Telegraph Company pays to him a fee of $75 upon the first $100,000 of its capital stock, and $25 upon each additional $100,000 of stock. The capital stock of the Telegraph Company being $100,000,000, the sum which the Secretary required to be paid as a condition of the company's right to have its articles of incorporation filed, and thereafter to continue doing business within Arkansas without incurring the penalties prescribed by the statute, was $25,050.

We have seen that the act of 1907 provided that if any foreign corporation, without the consent of the other party to any suit brought by or against it in any state court should remove such suit to the Federal court, or institute a suit against a citizen of Arkansas in the Federal court, it became the duty of the Secretary of State to forthwith revoke all authority in the company and its agents to do business in Arkansas and publish such revocation in some newspaper of general circulation in the State; and if after such revocation the company continued to do *any* business in Arkansas it became subject to a fine of not less than $1,000 *for each day* it so continued, to be recovered by suits instituted by prosecuting attorneys in the name of the State for the use and benefit of the county in which the suit was brought; so, if the company failed to comply with any of the provisions of the act it became subject to a fine of $1,000; further, if a foreign corporation failed or refused to file its articles of incorporation, as required, it could not "make any contract" in Arkansas "which can be enforced

by it either in law or in equity." Before the bringing of this suit the company had, in fact, instituted a suit in the United States Circuit Court to enjoin the prosecuting attorneys in the several districts of the State from proceeding against it to recover the penalties set forth in the act in question—the suit of *Western Union Telegraph* v. *Andrews &c.*, this day decided, see p. 165, *post*.

It is alleged, and the demurrer admits, that the Secretary of State has threatened to promulgate, and, unless restrained by order of court, will promulgate, a proclamation that the authority of the company to do business in Arkansas has been revoked and publish the fact of such revocation in the newspapers, thereby making it appear that the company had become subject to the prescribed penalties to be recovered in suits brought by the State's prosecuting attorneys, and incapacitated, if the statute be enforced against it, to make any contract in Arkansas, whatever its subject-matter, which is enforcible in law or equity.

The special grounds upon which the statute in question is alleged to be unconstitutional and void may be thus summarized:

1. It imposes upon the Secretary of State the duty—in the event the company instituted a suit in the Federal court against a citizen of Arkansas, or removed to the Federal court, without the consent of the other party, any suit brought by or against it in any court of the State—to forthwith revoke its authority to do business within Arkansas, and subjects the company to the penalty of $1,000 for each day's continuance of such business in the State after such revocation.

2. If the company fails to file a copy of its articles of incorporation with the Secretary of State, and does not pay, in advance of such filing, the required fee or tax, based on its *capital stock*, which represents its property and business everywhere, inside and outside of the State, it is made liable to a fine of $1,000 for continuing, after such failure, to do business in Arkansas.

3. As the lines established by the company in Arkansas are

practically of no value unless used as the same have been located and constructed, any provision that would prohibit their being used for the purposes and as the same were constructed and designed to be used would deny it the equal protection of the laws and deprive it of its property without due process of law.

4. The State lays an unequal burden on the plaintiff as compared with corporations of Arkansas, in that domestic corporations, organized and existing at the time of the passage of the statute, are not required to pay into the treasury of the State any sum whatever upon their capital stock, but are allowed to continue their business without the payment of any sum; while corporations of other States, even those having lines within the State, under the protection thereof, are required to pay a large tax measured by their *entire capital stock, wherever employed,* for the privilege of continuing in Arkansas their established and existing business, whether the same be domestic or foreign commerce.

5. Upon the failure of the company to pay the required fee, based on its capital stock employed both within and without the State, the company is forbidden, or is not allowed, to make any contract within the State, which can be enforced either in law or equity, whether the same relates to domestic, interstate or foreign commerce; whereby, it is alleged, the statute denies to the company the equal protection of the laws, and seeks to er force an illegal exaction for the privilege of using its property for purposes of domestic, interstate and foreign commerce.

6. As the company originally—some thirty or forty years ago—entered the State of Arkansas and constructed and has operated its lines of telegraph, with the consent of the State, and during that period has extended and operated its lines within its limits, with its consent; as the State, from time to time, through legislative enactments, has not only recognized the company's right to transact business within its limits, but regulated its business and affairs; and as, during the above

period, with the knowledge and acquiescence of the State, and in reliance upon such license, consent and acquiescence the company has expended large sums of money for the purpose of transmitting messages between the people of Arkansas, the State cannot withdraw its license and expel the company from its limits, even with respect to local business, without impairing the obligation of the company's contract with the State.

Such is the case as made by the bill; and the relief asked is a decree, declaring the statute unconstitutional and restraining any attempt to collect said fee of $25,050, and from imposing any of the penalties prescribed by it or by any provision therein (except the one requiring the designation of an agent upon whom process may be served in any suit brought against the Telegraph Company) and enjoining the defendant from attempting to revoke, or from proclaiming that he has revoked, its authority to do business in Arkansas.

The first contention of the appellant that this action is one against the State within the meaning of the Eleventh Amendment of the Constitution, declaring that the judicial power of the United States shall not extend to any suit in law or equity against a State by a citizen of another State. This contention must be held untenable on the authority of *Western Union Telegraph Company* v. *Andrews &c.*, this day decided. See p. 165, *post.*

But the vital question in the case is as to the constitutionality of the Arkansas statute. It is insisted by the defendant, among other grounds, that the provision in the statute requiring a foreign corporation, seeking to do business in the State, to pay a fee based upon the amount of its capital stock, for *filing* with the Secretary of State its articles of incorporation or association is a device which, in effect and by its necessary operation, under the guise of regulating intrastate business, imposes a tax on the interstate business of such corporation, as well as a tax on its property used and permanently located outside of the State.

Interpreting it according to the ordinary acceptation of its words, the statute does not discriminate between corporations engaged in interstate commerce and corporations whose business is intrastate in its character, so to make it clear that the State has not assumed to regulate or burden interstate business. Its words are unqualified and are made applicable to *"every* company or corporation incorporated under the laws of any other State, Territory or county, including foreign railroad and foreign fire insurance and life insurance, now or hereafter doing business in this State." § 1. *"Any* foreign corporation which shall fail to comply with the provisions of this act and shall do any business in this State," etc. § 2. *"All* corporations hereafter incorporated in this State and *all* foreign corporations seeking to do business in this State," etc. According to the words of the statute, not unreasonably construed, every corporation of another State, seeking to do business in Arkansas, whether interstate or domestic, in order that it may do business of any kind in Arkansas, without coming into conflict with the statute, must file a copy of its authenticated charter with the Secretary of State; and it seems that before that officer will file such copy the corporation must pay to him a given amount based upon its capital stock, representing, necessarily, *all* its business, interstate and intrastate, as well as *all* its property everywhere, *beyond as well as within the State.* If the foreign corporation, without first paying those amounts, does business of any kind in the State it will incur not only the penalty of $1,000 for so doing but will forfeit its right to make any contract in the State, enforcible in law or equity—whatever its subject-matter—even if it be one relating to the business of the United States or to commerce among States. A statute of that kind would be palpably in conflict with the Constitution, and, especially an invasion of rights under that instrument of a corporation engaged in interstate commerce and seeking to do business in Arkansas.

But, it is said, that the statute in question should not be so

broadly construed. The reasons given for this contention are these: Before the statute here in question was passed there was in force in Arkansas a statute (act of February 16th, 1899, as amended by the act of May 8th, 1899, Kirby's Dig., chap. 31) which was very similar, in many respects, to the act of 1907, now under examination. The state Supreme Court had occasion to determine the scope and effect of that act of 1899. Its decision was handed down March 18th, 1907, while the Legislature of Arkansas was in session, and on the same day another decision was rendered holding material parts of that act to be repealed. *Western Union Tel. Co.* v. *State*, 82 Arkansas, 302; *Same* v. *State*, 82 Arkansas, 309. These decisions, as counsel suggest, virtually left the State without any statute prescribing fees to be paid by foreign corporations. Thereafter, on May 13th, 1907, the Legislature passed the statute here in question, known as the Wingo Act, which, with slight exceptions not necessary to be mentioned, was substantially like the act of 1899. The Supreme Court of the State, in *Western Union Tel. Co.* v. *State*, 82 Arkansas, 309, 314, construing the above act of 1899, had held that it was its duty, unless otherwise compelled by the plain, ordinary meaning of the words of a statute, to reject any construction that would bring it into conflict with the Constitution of the United States, *Grenada County* v. *Brogden*, 112 U. S. 261; Cooley's Const. Lim., § 218; *Atty. Gen.* v. *Electric Storage Battery Co.*, 188 Massachusetts, 239; that it was too well settled to admit of debate, that "it is beyond the power of the State under the guise either of a license tax or police regulation to impose burdens upon interstate commerce or to deny a foreign corporation the right to engage in such commerce in the State"—citing *Leloup* v. *Port of Mobile*, 127 U. S. 640; *Crutcher* v. *Kentucky*, 141 U. S. 47; and *Brennan* v. *Titusville*, 153 U. S. 289. Its conclusion, in that case, was that the act of 1899 "must be construed to have been intended only to impose terms upon the right of a foreign corporation to carry on *intra*state business and it was a valid statute." Now, the

argument at the bar was that when the Wingo Act was passed, the Legislature must be deemed to have had in mind the judicial construction given to the previous act of 1899, and that it must be assumed that the same court would adhere to its already expressed views; so, that if a case ever came before it hereafter that involved the meaning and scope of the Wingo Act, expressed substantially in the same words as the act of 1899, the court would construe the Wingo Act, as it construed the act of 1899, as intended only to apply to intrastate business, and not as having been enacted *for the purpose* of burdening or imposing illegal terms for the transaction of interstate business by foreign corporations in Arkansas.

But the acceptance of this view would not remove the difficulty which confronts the State in the present case. According to well-settled rules of statutory construction, the validity of a statute, whatever its language, must be determined by its effect or operation, as manifested by the natural and reasonable meaning of the words employed. *Henderson* v. *Mayor*, 92 U. S. 259, 268. If a statute, by its necessary operation, really and substantially burdens the interstate business of a foreign corporation seeking to do business in a State, or imposes a tax on its property outside of such State, then it is unconstitutional and void, although the state Legislature may not have intended to enact an invalid statute. But even if we should assume that the state court would construe the statute of 1907 as intended not to apply to interstate commerce but only to local or intrastate business, we are, nevertheless, informed by its decision in *Western Union Tel. Co.* v. *State*, 82 Arkansas, 302, 318, that, in the opinion of the state court, the statute so construed is valid, and therefore the Telegraph Company, in order that it may safely continue local business in Arkansas, *must* first pay into the treasury of the State certain amounts based on its *entire capital stock for simply filing its articles of incorporation* with the Secretary of State; and if it does not pay the specified fees, based on its entire capital stock, and yet continues to do intrastate busi-

ness in Arkansas, it will incur the prescribed penalty of *one thousand dollars* for continuing to do business in the State, and, in addition, lose its power or right to make any enforcible contract in the State. These are, in effect, *conditions* upon which the Telegraph Company; lawfully engaged in interstate business, and entitled to be in Arkansas for such business, is permitted to enter the State to do local business within its limits. And these conditions have been prescribed, notwithstanding the company has been .permitted for many years, long before the act here in question was passed, to do local business in the State with its permission and acquiescence, and has invested there large sums of money in preparing to serve the public efficiently in that kind of business. The capital stock of the company represents, we repeat, *all* its business, property and interests throughout the United States and foreign countries, and the requirement that the company, engaged in interstate commerce, may continue to do a local business in Arkansas, and escape the heavy penalties prescribed, must pay a given amount (in this case $25,050), based on all its capital stock, merely for filing its articles of incorporation with the Secretary of State, is, in effect, a direct burden and tax on its interstate business, as well as on its property outside of the State. The case cannot be distinguished in principle from *Western Union Tel. Co.* v. *Kansas,* ante, p. 1, and *Pullman Company* v. *Kansas, ante,* p. 56, recently decided. The difference in the wording of the Kansas and Arkansas statutes cannot take the present case out of the ruling of the former cases. On the authority of the *Kansas cases,* and for the reasons stated in the opinions therein, we hold the statute in question to be unconstitutional and void, as illegally burdening interstate commerce and imposing a tax on property beyond the jurisdiction of the State.

Whether the statute of Arkansas is, in any particular, violative of the constitutional guaranty securing the equal protection of the laws, or of the guaranty prohibiting the deprivation of property, except by due process of law, or of any

other constitutional guaranty, it is not necessary now to consider. What has been said is sufficient for the determination of the present case, and we do not at this time go further than is indicated in this opinion. Suffice it to say that the defendant threatens to issue, in his official capacity, and publish, in the newspapers, a proclamation to the effect—no matter upon what specific grounds—that the Telegraph Company is not authorized, but is forbidden, under penalty, by the laws of Arkansas, from continuing to do local business in that State. Such a proclamation, which the court, as well as every one else, must know, would not only produce confusion in and irreparable damage to the company's business in Arkansas, but would, in effect, declare that the company is not only subject to a prescribed penalty of $1,000 for continuing to do local business in Arkansas, but is forbidden to make any contract whatever in that State that is enforcible in law or equity. In order to prevent the contemplated or threatened injury to the company the court below properly made a decree, perpetually enjoining the appellant, as Secretary of State, his agents and attorneys, from making proclamation that the Telegraph Company has no authority to continue doing business in Arkansas.

Mr. Justice Moody heard the argument of this case, participated in its decision, and concurs in this opinion.

The Chief Justice, Mr. Justice McKenna and Mr. Justice Holmes dissent.

The decree below must be affirmed.

*It is so ordered.*