[S. F. No. 5565. In Bank.—July 3, 1912.]

## H. K. MULFORD COMPANY, Petitioner, v. C. F. CURRY, Secretary of State of the State of California, Respondent.

CORPORATIONS—LICENSE-FEE BASED ON AMOUNT OF CAPITAL STOCK—CONSTITUTIONAL LAW—FOREIGN CORPORATIONS ENGAGED IN INTER-STATE AND INTRA-STATE COMMERCE.—The act of 1905, providing for a license-tax upon corporations (Stats. 1905, p. 493), and requiring every corporation, incorporated under the laws of this state, and every foreign corporation then doing, or which should thereafter engage in business in the state, to procure annually from the secretary of state a license authorizing it to transact business in the state, and to pay therefor a license-tax gradated upon the amount of its authorized capital stock, and section 416 of the Political Code, requiring corporations to pay the secretary of state, for his

services in filing their articles of incorporation, certain fees gra-
dated upon the amount of their capital stock, are unconstitutional
and void, as to foreign corporations engaged in carrying on an
interstate as well as an *intra*-state business, for the reason that
such exactions are the imposition of a direct burden upon their
interstate commerce in violation of the commerce clause of the
constitution of the United States, and also an illegal tax on their
property situated outside of the state.

Id.—Limitations on Power of State to Regulate Foreign Cor-
porations—State cannot Impose Burden on Interstate Com-
merce.—The power of the state to regulate and prescribe terms
under which a foreign corporation may engage in *intra*-state or
domestic business is subject to the limitation that where such
foreign corporation is engaged in *inter*-state, as well as *intra*-
state business, no such term, condition, or requirement will be
constitutional if it imposes any burden upon the interstate busi-
ness of such corporation, whatever be its name or form.

Id.—License-Fee Based on Entire Capital Stock is Burden on
Interstate Commerce—Taxation of Property Without State.—
A license or privilege tax for the conduct of such *intra*-state busi-
ness, based upon the total capital or the total capital stock of such
corporation without just relation to the proportion which the
capital or the capital stock used in the state bears to the whole
capital or capital stock, though in terms declared to be directed
solely to the *intra*-state business of such corporation, is unconstitu-
tional and void, (a) as being in violation of the commerce clause
of the constitution by the imposition of an illegal burden upon
interstate commerce, and (b) because violative of the fourteenth
amendment of the constitution and its equal protection and due
process of law clauses as an effort to tax the property of citizens
of the United States, situated beyond the jurisdiction of the taxing
state, and not amenable to its revenue laws.

Id.—Control by State of Foreign Corporations—Exclusion of
Foreign Corporation.—A corporation unless expressly forbidden
so to do may acquire rights of contract and property in a foreign
jurisdiction. A state, however, may exclude absolutely a foreign
corporation not engaged in interstate commerce, but which proposes
solely to engage in domestic business from doing such business
within its limits, and may impose terms and conditions upon which
alone such business may be commenced within its limits, provided no
unconstitutional condition is made a part of any actual agreement.

Id.—Limitations on Power of Regulation or Exclusion.—When a
foreign corporation has once engaged in domestic business within
the state, the state may not exercise its powers of exclusion or
regulation to the destruction of the property of the corporation
or of its vested constitutional rights.

ID.—VIEWS OF UNITED STATES SUPREME COURT AS TO EFFECT OF REGU-LATION ON INTERSTATE COMMERCE.—When a foreign corporation is engaged both in interstate, as well as *intra*-state business, no fee or regulation, though expressly directed to *intra*-state business, will be upheld, if, in the view of the supreme court of the United States, such exaction or requirement imposes a burden upon the interstate business of such corporation.

ID.—DOMESTIC CORPORATIONS ENGAGED IN INTERSTATE COMMERCE.—Such license-taxes are also invalid as to domestic corporations engaged in interstate as well as *intra*-state business in California, and having property without the state.

ID.—APPLICABILITY OF LICENSE LAWS—CORPORATIONS WITHIN PUR-VIEW OF ACT.—Such laws can apply only to domestic corporations nowhere engaged in interstate business and to foreign corporations seeking to enter the state solely to do domestic business. Upon the right of a foreign corporation to enter the state to do an *inter*-state business the state may impose no burden whatsoever.

ID.—FOREIGN CORPORATIONS ENGAGED IN PURELY DOMESTIC BUSINESS—LICENSE-TAX LEVIED ON PROPERTY WITHOUT STATE.—Such license laws, as to foreign corporations engaged in purely domestic business within the state and so engaged at the time the laws went into effect, are unconstitutional, because the tax levied thereby, in the form of the fee required to be paid based upon the total capital stock of the corporation, is levied upon property situated beyond the jurisdiction of the state, and is therefore in violation of the "due process of law" and the "equal protection of the law" clauses of the fourteenth amendment of the constitution of the United States.

ID.—LICENSE-FEE IS IN EFFECT A TAX.—Such license-fee, by what-ever name it may be designated in the statute, is considered by the supreme court of the United States as partaking of the nature of, and as being in effect, a tax.

APPLICATION for a Writ of Mandate directed to the Secretary of State of the State of California.

The facts are stated in the opinion of the court.

Hillyer, Stringham & O'Brien, for Petitioner.

U. S. Webb, Attorney-General, and R. C. Van Fleet, Deputy Attorney-General, for Respondent.

HENSHAW, J.—This is an original petition addressed to this court for a writ of mandate, requiring the secretary of

state to receive and file a certain document tendered to him
by petitioner, designating and appointing one F. L. Clark
as agent of petitioner upon whom process affecting petitioner
may be served. Respondent refused to accept and file the
tendered document, basing his refusal upon the declination
of petitioner to tender therewith for filing a certified copy
of its articles of incorporation and to pay the fee prescribed
by section 409 of the Civil Code, which section is as follows:—

"For filing and issuing a certified copy as required in sec-
tion four hundred and eight of this code, corporations formed
under the laws of another state, or of a territory, or of a
foreign country, must pay the same fees as are paid by cor-
porations formed under the laws of this state."

The fees herein referred to are fixed by section 416 of the
Political Code which declares:

"The secretary of state, for services performed in his
office, must charge and collect the following fees: . . .

"4. For filing articles of incorporation, if the capital stock
amounts to twenty-five thousand dollars or less, fifteen dol-
lars; if the capital stock amounts to over twenty-five thou-
sand dollars, and not over seventy-five thousand dollars,
twenty-five dollars; if the capital stock amounts to over
seventy-five thousand dollars, and not over two hundred thou-
sand dollars, fifty dollars; if the capital stock amounts to over
two hundred thousand dollars, and not over five hundred thou-
sand dollars, seventy-five dollars; if the capital stock is over
five hundred thousand dollars, and not over one million dol-
lars one hundred dollars; if the capital stock is over one
million dollars fifty dollars additional for every five hun-
dred thousand dollars or fraction thereof of capital stock
over and above one million dollars; etc. . . . "

Having further relation to the matter is an act entitled:
"An act relating to revenue and taxation, providing for a
license-tax upon corporations, and making an appropriation
for the purpose of carrying out the objects of this act."
Section 2 of this act declares as follows:

"It shall be the duty of every corporation, incorporated
under the laws of this state, and of every foreign corpora-
tion now doing business, or which shall hereafter engage in
business in this state, to procure annually from the secretary

of state a license authorizing the transaction of such business in this state, and shall pay therefor a license-tax as follows:—

"When the authorized capital stock of the corporation does not exceed ten thousand dollars ($10,000) the tax shall be ten dollars ($10); when the authorized capital stock exceeds ten thousand dollars ($10,000) but does not exceed twenty thousand dollars ($20,000) the tax shall be fifteen dollars ($15); when the authorized capital stock exceeds twenty thousand dollars ($20,000) but does not exceed fifty thousand dollars ($50,000) the tax shall be twenty dollars ($20); when the authorized capital stock exceeds fifty thousand dollars ($50,000) but does not exceed one hundred thousand dollars ($100,000) the tax shall be twenty-five dollars ($25); when the authorized capital stock exceeds one hundred thousand dollars ($100,000) but does not exceed two hundred and fifty thousand dollars ($250,000) the tax shall be fifty dollars ($50); when the authorized capital stock exceeds two hundred and fifty thousand dollars ($250,000) but does not exceed five hundred thousand dollars ($500,000) the tax shall be seventy-five dollars ($75); when the authorized capital stock exceeds five hundred thousand dollars ($500,00) but does not exceed two million dollars ($2,000,000) the tax shall be one hundred dollars ($100); when the authorized capital stock exceeds two million dollars ($2,000,000) but does not exceed five million dollars ($5,000,000) the tax shall be two hundred dollars ($200); when the authorized capital stock exceeds five million dollars ($5,000,000) the tax shall be two hundred and fifty dollars ($250). . . .

"The license-tax or fee hereby provided authorizes the corporation to transact its business during the year or for any fractional part of such year in which such license-tax or fee is paid." (Stats. 1905, p. 493.)

The uncontroverted showing is that the petitioner is a foreign corporation, duly organized and existing under the laws of the state of Pennsylvania; it has an authorized and issued capital stock of one million dollars, and was organized for and is engaged in the business of manufacturing and selling tablets, pills, triturates, fluid extracts, etc.; it was so engaged within the state of California before the passage of the license-law above quoted; its principal place of business is in Philadelphia, Pennsylvania; it maintains branch

houses in the principal cities of many other states, including the city of San Francisco, state of California; it maintains its plant and laboratory in Philadelphia, and sells its products in each and all of the various states and territories of the United States; it has maintained an agency in the state of California for the purpose of receiving, and filling orders for articles of its own manufacture at all times since the first day of December, 1908, and from its place of business at San Francisco, California, it ships goods upon orders received from the states of Oregon, Nevada, and Arizona. By section 405 of the Civil Code, every foreign corporation must, as this petitioner attempted to do, file in the office of the secretary of state the "designation of some person residing within the state upon whom process issued by authority of or under any law of this state may be served." By section 406 of the same code no foreign corporation can "maintain or defend any action or proceeding in any court of this state until the corporation has complied with the provisions" of section 405 of the Civil Code.

By section 15 of article XII of the constitution of this state it is declared that "no corporation organized outside the limits of this state shall be allowed to transact business within this state under more favorable conditions than are prescribed by law to similar corporations organized under the laws of this state."

Petitioner's contention is that as to it, a foreign corporation, the exaction of these license-taxes is the imposition of a direct burden upon its interstate commerce in violation of the commerce clause of the constitution of the United States (Const. U. S., art. 1, sec. 8, subd. 3).

This court is forced to the conclusion that upon the authority of *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1, [54 L. Ed. 355, 30 Sup. Ct. Rep. 190]; *Pullman Co.* v. *Kansas,* 216 U. S. 56, [54 L. Ed. 378, 30 Sup. Ct. Rep. 232]; and *Ludwig* v. *Western Union Tel. Co.,* 216 U. S. 146, [54 L. Ed. 423, 30 Sup. Ct. Rep. 280], this contention must be upheld.

The consequences which follow this conclusion have not been overlooked. They are far reaching and serious, affecting to no inconsiderable extent the revenue and the revenue laws of this state. The decisions of the supreme court of the United States in the last cited cases were rendered by a

bare majority of a sharply divided court. The decision of the case at bar was deliberately delayed to note whether any recession from the views expressed in these cases would follow from the change in the personnel of the court. No such recession, however, has followed, and, indeed, the supreme court of the United States as a body has acquiesced in and accepted these decisions as is shown by *Atchison, Topeka & Santa Fe R. R. Co.* v. *Timothy O'Conner*, 223 U. S. 280, [56 L. Ed. 436, 32 Sup. Ct. Rep. 216] (decided February 9, 1912), where Justice Holmes who wrote the dissenting opinions in the earlier cases delivered the opinion of the undivided court based upon and in affirmance of those earlier cases. The principle of those decisions may be briefly stated. The admitted power of the state to regulate and prescribe terms under which a foreign corporation may engage in *intra*-state or domestic business is subject to this limitation, that where such foreign corporation is engaged in *inter*-state, as well as *intra*-state business, no such term, condition or requirement will be constitutional if it imposes any burden upon the interstate business of such corporation, whatever be its name or form; a license or privilege tax, for the conduct of such *intra*-state business, based upon the total capital or the total capital stock of such corporation without just relation to the proportion which the capital or the capital stock used in the state bears to the whole capital or capital stock, though in terms declared to be directed solely to the *intra*-state business of such corporation, is unconstitutional and void, (a) as being in violation of the commerce clause of the constitution by the imposition of an illegal burden upon interstate commerce, and (b) because violative of the fourteenth amendment of the constitution and its equal protection and due process of law clause, as an effort to tax the property of citizens of the United States, which property is situated beyond the jurisdiction of the taxing state and is not amenable to its revenue laws.

The minutest investigation and the most careful consideration fail to disclose any ground upon which the case here at bar may be distinguished from those cited. The legal parallelism between this case and that of *Ludwig* v. *Western Union Tel. Co.*, 216 U. S. 146, [54 L. Ed. 423, 30 Sup. Ct. Rep. 280], is perfect. Both corporations were engaged in

*inter* as well as *intra*-state business.  Both were so engaged before the passage of the excise law in question.  The Arkansas law required every foreign corporation now or hereafter doing business in the state to file a copy of its articles of incorporation, etc., and to pay for the filing of such articles "a fee of $25 where the capital stock is $50,000 or under; $75 where the capital stock is over $50,000 and not more than $100,000; and $25 additional for each $100,000 of capital stock."  A foreign corporation failing to comply with the provisions of the act was forbidden to do any business in the state and was subjected to fine.  The supreme court of the United States first meeting the argument that the statute should be construed as applying only to the *intra*-state business of foreign corporations declared, in effect, that when such a question was presented its ultimate determination would always rest with that court which would of and for itself determine the meaning of such statutes solely from what it should conclude would be their operation and effect.  It construed the provision of the statute before it to mean that upon a failure of a foreign corporation to comply with the provisions of the act, such a corporation should be *forbidden* to do any business within the state, interstate as well as *intra*-state.  Then laying this construction aside it declared that if the provisions of the act were held to apply solely to the *intra*-state business of such corporations the provisions were unconstitutional and void for the reasons above given, the court saying: "The capital stock of the company represents, we repeat, *all* its business, property and interests throughout the United States and foreign countries, and the requirement that the company, engaged in interstate business, may continue to do a local business in Arkansas, and escape the heavy penalties prescribed, must pay a given amount (in this case $25,050), based on all its capital stock, merely for filing its articles of incorporation with the secretary of state, is in effect, a direct burden and tax on its interstate business, as well as on its property outside of the state.  The case cannot be distinguished in principle from *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1, [54 L. Ed. 355, 30 Sup. Ct. Rep. 190], and *Pullman Company* v. *Kansas,* 216 U. S. 56, [54 L. Ed. 378, 30 Sup. Ct. Rep. 232], recently decided.  The difference in the wording of the Kansas and Arkansas stat-

utes cannot take the present case out of the ruling of the former cases. On the authority of the *Kansas cases,* and for the reasons stated in the opinions therein, we hold the statute in question to be unconstitutional and void, as illegally burdening interstate commerce and imposing a tax on property beyond the jurisdiction of the state.''

The parallelism between this case and the case at bar is, we repeat, so perfect, as to render futile any attempt to distinguish them and thus to save the California laws. This court is alive to the difficulties which the supreme court of the United States has frequently adverted to and which arise from the complexity of state laws that, with or without design, trespass upon the reserved rights of the United States in its control of foreign and interstate commerce. It has full appreciation of the significance of the language of Chief Justice Marshall in *Brown* v. *Maryland,* 12 Wheat. (U. S.) 419, [6 L. Ed. 678] : ''It may be doubted whether any of the evils proceeding from the feebleness of the federal government, contributed more to that great resolution which introduced the present system, than the deep and general conviction, that commerce ought to be regulated by Congress. It is not, therefore, matter of surprise, that the grant should be as extensive as the mischief, and should comprehend all foreign commerce, and all commerce among the states. To construe the power so as to impair its efficacy, would tend to defeat an object, in the attainment of which the American public took, and justly took, that strong interest which arose from a full conviction of its necessity.'' It is just and right that the supreme court of the United States should sit as an ever watchful Warden of the Marches to repel either unintentional trespass or deliberate invasion upon this most important domain. It is but natural too, that in the multitude of forms in which the question arises and in the multitude of cases through which it is presented, apparent inconsistencies of expression should be found and minds should differ over the question whether any given state law does in effect exceed the powers of the state and invade the domain reserved exclusively to federal control. But over one question there can be no doubt, that in all this multitude of cases there is an absolute unanimity in the principle declared,—namely, that the state is without power to impose any burden or regulation

on interstate commerce "in a relatively immediate way." (*Galveston etc. Ry. Co.* v. *Texas*, 210 U. S. 217, [52 L. Ed. 1031, 28 Sup. Ct. Rep. 638].)

So much we think it proper to say in view of our further duty in pointing out for future legislative action the limitations upon the power of the state in dealing with foreign corporations.

The limitations upon the power of the state to forbid a corporation from doing a domestic business within its borders or to regulate the conduct of that business may be thus summarized: A corporation unless expressly forbidden so to do may acquire rights of contract and property in a foreign jurisdiction. A state, however, may exclude absolutely a foreign corporation not engaged in interstate commerce but which proposes solely to engage in domestic business from doing such business within its limits and so may, of course, impose terms and conditions upon which alone such business may be commenced within its limits, provided no unconstitutional condition is made a part of any actual agreement (*Southern Pacific Co.* v. *Denton*, 146 U. S. 202, [36 L. Ed. 942, 13 Sup. Ct. Rep. 44]); when a foreign corporation has once engaged in domestic business within the state, the state may not exercise its powers of exclusion or regulation to the destruction of the property of the corporation or of its vested constitutional rights; and, finally, when such corporation is engaged both in interstate, as well as *intra*-state business, no fee or regulation, though expressly directed to *intra*-state business will be upheld, if, in the view of the supreme court of the United States, such exaction or requirement imposes a burden upon the interstate business of such corporation. (*Bank of Augusta* v. *Earle*, 13 Pet. 579, [10 L. Ed. 274]; *Horn Silver Mining Co.* v. *New York*, 143 U. S. 305, [36 L. Ed. 164, 12 Sup. Ct. Rep. 403]; *Southern Pacific Co.* v. *Denton*, 146 U. S. 202, [36 L. Ed. 942, 13 Sup. Ct. Rep. 44]; *Waters-Pierce Oil Co.* v. *Texas*, 177 U. S. 28, [44 L. Ed. 657, 20 Sup. Ct. Rep. 518]; *Security Mutual Life Ins. Co.* v. *Prewitt*, 202 U. S. 246, [6 Ann. Cas. 317, 50 L. Ed. 1013, 26 Sup. Ct. Rep. 619]; *National Council* v. *State Council*, 203 U. S. 151, [51 L. Ed. 132, 27 Sup. Ct. Rep. 46]; *United States ex rel. Attorney-General* v. *Delaware & Hudson Co.*, 213 U. S. 366, [53 L. Ed. 836, 29 Sup. Ct. Rep. 527]; *Home Ins. Co.*

v. *New York,* 134 U. S. 594, [33 L. Ed. 1025, 10 Sup. Ct. Rep. 593], and cases *supra.*)

Under these principles of law it is proper to point out that not only do these license-taxes fall with respect to foreign corporations engaged in interstate, as well as *intra*-state business in California, but of necessity fall as well with respect to domestic corporations engaged in such foreign business and having property without the state. (*Galveston etc. Ry. Co.* v. *Texas,* 210 U. S. 217, [52 L. Ed. 1031, 28 Sup. Ct. Rep. 638].) Since if a tax based on the total capital stock of a foreign corporation doing business within this state is a burden on interstate commerce, equally must it be so with a domestic corporation engaged elsewhere in interstate commerce and *intra*-state business and owning property without the state. The attention of the legislature is thus directed to the fact that the law in question can apply only to domestic corporations nowhere engaged in interstate business and to foreign corporations seeking to enter the state solely to do domestic business. For upon the right of a foreign corporation to enter the state to do an *inter*-state business the state may impose no burden whatsoever. (*International Textbook Co.* v. *Pigg,* 217 U. S. 91, [18 Ann. Cas. 1103, 24 L. R. A. (N. S.) 493, 54 L. Ed. 678, 30 Sup. Ct. Rep. 481].)

The invalidity of these license laws if sought to be applied to foreign corporations engaged in domestic business within the state and so engaged (as was this petitioner) at the time the law went into effect, rests upon entirely different constitutional provisions. As has been pointed out the supreme court of the United States declared the Kansas laws under review in *Western Union Tel. Co.* v. *Kansas,* 216 U. S. 1, [54 L. Ed. 355, 30 Sup. Ct. Rep. 190] and *Pullman Co.* v. *Kansas,* 216 U. S. 56, [54 L. Ed. 378, 30 Sup. Ct. Rep. 232], to be unconstitutional upon two separate distinct and wholly unrelated constitutional grounds; the first, because the law violated the "commerce clause" of the constitution of the United States, and the second, because the law levied a tax, by requiring a fee to be paid, based upon the total capital stock of the foreign corporation in violation of the fourteenth amendment of the constitution of the United States, its "due process of law" and its "equal protection of the law" clauses. It attempted to tax the property of a cor-

poration without the state, and, therefore, beyond the juris-
diction of the taxing power of the state. It is, of course,
well established that a tax law of a state can have no extra-
territorial operation. (State Tax on Foreign Held Bonds, 15
Wall. 300, [21 L. Ed. 179]; *Union Transit Co.* v. *Kentucky*,
199 U. S. 194, [4 Ann. Cas. 493, 50 L. Ed. 150, 26 Sup. Ct.
Rep. 36].) It is, of course, equally apparent that if a tax
levied by a state upon all the capital stock of a foreign cor-
poration is violative of the fourteenth amendment of the
constitution and confiscatory in character, it is equally vio-
lative of such constitutional amendment whether such foreign
corporation be engaged in interstate business or purely in
domestic business. For this determination is not at all de-
pendent on, but is entirely independent of and unrelated to
the consideration whether or not such corporation is engaged
in interstate commerce. It is not, in other words, *because* a
foreign corporation is engaged in interstate commerce and has
property without the state that a state tax based upon its
total capital stock is unconstitutional. It is unconstitutional
in the case of any corporation *solely because* in taxing prop-
erty beyond the jurisdiction of the state it is in violation of
the fourteenth amendment of the constitution of the United
States, an amendment which, as we have said, is in no way
related to and is entirely independent of the commerce clause
of the constitution. In both the Western Union Telegraph
Company case and in the Pullman case the Kansas law was
held to be unconstitutional upon both of these separate and
distinct grounds. More attention was paid in the opinions
to the consideration of the commerce clause than to a consid-
eration of the fourteenth amendment, because as pointed out
by Mr. Justice White in his concurring opinion in the former
of the two cases ''No one questions that the law which is
here in dispute, imposed by the law of Kansas upon the cor-
poration, is repugnant to the constitution of the United
States because wanting in due process, and that it is there-
fore confiscatory in character. The tax being thus conceded
to be inherently vicious, there, of course, no attempt to sus-
tain its validity on its extrinsic merits.'' In the prevailing
opinion in the same case it is said: ''We need not stop to dis-
cuss at length the specific question whether the state can by
any regulation make the property of the company, outside of

Kansas, contribute directly to the support of its schools; such
being the effect of the requirement that it pay into the state
treasury, for the benefit of the state school fund, a given per
cent of all its capital stock as a condition of its doing local
business in Kansas. It is firmly established that, consistently
with the due process clause of the constitution of the United
States, a state cannot tax property located or existing perma-
nently beyond its limits. (*Louisville etc.* v. *Kentucky*, 188
U. S. 385, 398, [47 L. Ed. 513, 23 Sup. Ct. Rep. 463]; *Union
Transit Co.* v. *Kentucky*, 199 U. S. 209, [4 Ann. Cas. 493, 50
L. Ed. 150, 26 Sup. Ct. Rep. 36].)'' In the Pullman case the
court sums up its reasons and conclusions under three heads.
The first of these is that the tax is a burden upon interstate
commerce; the second is that it is in violation of the four-
teenth amendment, the court in that connection saying:
''That the requirement that the company, as a condition of
its right to do *intra*-state business in Kansas, should, in the
form of a fee, pay to the state a specified per cent of its
authorized capital, was a violation of the constitution of the
United States, in that such a single fee, based as it was on
all the property, interests, and business of the company,
within and out of the state, was, in effect, a tax both on the
interstate business of that company, and on its property out-
side of Kansas, and compelled the company, in order that it
might do local business in Kansas in connection with its in-
terstate business, to waive its constitutional exemption from
state taxation on its interstate business and on its property
outside of the state and contribute from its capital to the sup-
port of the public schools of Kansas''; while in the Ludwig
case the court states the ''vital question'' to be the consti-
tutionality of the Arkansas statute which ''under the guise
of regulating *intra*-state business imposes a tax upon the in-
terstate business of such corporation, *as well as a tax on its
property used and permanently located outside the state.*''
And the court further said: ''If a statute by its necessary
operation really and substantially burdens the interstate busi-
ness of a foreign corporation seeking to do business in a state
*or* imposes a tax upon its property outside of such state, then
it is unconstitutional and void, although the state legislature
may not have intended to enact an invalid statute.'' These
constitutional questions thus decided are, as we have pointed

out, in no way correlated, but are entirely separate and distinct. It is but the indulgence of futile and unwarranted speculation to say that the supreme court of the United States would call in the fourteenth amendment to the aid of a foreign corporation doing an interstate business to overthrow a state tax law and would not invoke it in the case of a foreign corporation engaged in purely domestic business, notwithstanding that the tax upon the capital stocks of the foreign corporations (and thus the tax upon the property without the jurisdiction of the state) was in both instances identically the same. Nor can relief be found in a refusal to call such a license-fee a tax. A state court may call it a fee or an exaction or a regulation, but the supreme court of the United States will call it a tax if, in its effect, it partake of the nature of a tax. As to the license-fee exacted by our own statute it has been declared to be a tax by the supreme court of the United States which says the condition that the company should "in the form of a fee pay to the state a specified per cent of its authorized capital was a violation of the constitution of the United States in that such a single fee based, as it was, upon all the property interests and business of the company within and out of the state was, in effect a tax, . . . on its property outside of Kansas and compelled the company in order that it might do local business in Kansas . . . to waive its constitutional exemption from state taxation . . . on its property outside of the state."

It follows from the foregoing that the requirement of section 408 of the Civil Code that petitioner file a certified copy of its articles, standing alone, is a reasonable requirement, an exaction not in restraint of interstate commerce and therefore valid (*Barron* v. *Burnside,* 121 U. S. 186, [30 L. Ed. 915, 7 Sup. Ct. Rep. 931]), but that the further requirement of the law that as a condition of such filing the petitioner pay the license-tax prescribed is invalid.

Let the mandate issue as prayed for.

Lorigan, J., Melvin, J., and Shaw, J., concurred.

ANGELLOTTI, J., concurring.—In view of the recent decisions of the United States supreme court referred to in the opinion, I concur in the judgment, and in the opinion except

so far as it intimates that subdivision 4 of section 416 of the Political Code and our so-called Corporation License-Tax Law are not valid as to *all* foreign corporations doing a purely domestic business in this state, and in no way engaged in interstate commerce in any other state. I can see no distinction in this regard between those foreign corporations engaged in a purely domestic business within this state at the time these laws went into effect, and those since coming into the state for the purpose of doing such business.

I am not at all satisfied that there is anything in any of the opinions of the United States supreme court referred to, when considered in the light of the exact questions presented for consideration therein, that compels the conclusion on this point that is declared in the opinion herein.

Sloss, J., concurred.

Rehearing denied.